### Taylor *v.* S. & N. Alabama R. Co. and another.

*(Circuit Court, M. D. Alabama. 1882.)*

1. CORPORATIONS—CONTRACTS OF.

Contracts, which though invalid for want of corporate powers, yet if fully executed, shall remain as the foundation of rights acquired by the transaction.

2. SAME—RIGHTS OF STOCKHOLDERS.

A stockholder of a corporation will not be allowed, after a reasonable time, to disturb and rescind a contract made by his corporation, after the same has been fully executed, on the ground that it is *ultra vires*, and in excess of the corporate powers granted by the charter of the corporation.

3. SAME.

Where a corporation issued preferred interest-bearing stock in excess of its authority, non-assenting stockholders must, within a reasonable time, dissent, and take steps to make their dissent effectual, or they will be held to have tacitly assented to the act of the corporation.

4. STATUTE OF LIMITATIONS—DISCOVERY OF FRAUD.

In actions seeking relief on the ground of fraud, where the statute of limitations has created a bar, the cause of action is not considered as having accrued until the discovery by the aggrieved party of the facts constituting the fraud complained of; but this does not absolve him from all effort or diligence to obtain such knowledge, and facts of which he might have obtained knowledge had he sought it from its natural sources of information which were at his command, will be deemed within his knowledge.

5. CORPORATE PROPERTY—CAPITAL STOCK.

The property of a corporation is a trust fund for the benefit of the stockholders in the hands of a corporate body, which is the trustee; but capital stock in the corporation in the hands of its owner, who has paid for it, is neither a trust fund, nor is its owner a trustee, and statutes of repose run to protect such owner in his right to such property.

In Equity.   Heard upon demurrer to amended bill.

BRUCE, D. J.   The amended bill assails the title and right of the Louisville & Nashville Railroad Company to the two millions capital stock in the South & North Alabama Railroad Company, issued to the Louisville & Nashville Railroad Company, as the successor and assignee of Tate and associates in their contract with the South & North Alabama Railroad Company, for the building and equipment of their road—the South & North Alabama Railroad.

By the terms of the contract between the South & North Alabama Railroad Company and Sam Tate and associates, of date March 21, 1871, it agreed to "issue to Sam Tate and associates, at 40 cents on the dollar, preferred stock bearing 6 per cent. interest, guarantied payable in kind from date of issue for 12 months after the completion of the road, and thereafter in cash.   *   *   *  "

By contract of May 19, 1871, which recites the assignment and transfer to the Louisville & Nashville Railroad Company of the contract of Sam Tate and associates with the South & North Alabama Railroad Company for the consideration therein named, the Louisville & Nashville Railroad Company "assumes and binds itself to perform all the obligations imposed by said contracts on said Sam Tate and associates.   *   *   *  "

And by contract of same date—May 19, 1871—between the two railroad companies named, the South & North Alabama Railroad Company agrees that it will issue to the Louisville & Nashville Railroad Company the said $2,000,000 of preferred or interest-bearing stock specified in said contract with Sam Tate and associates, if legally entitled to do so.

These contracts are made exhibits to the amended bill.   The proposition of the complainant is that the South & North Alabama Railroad Company had no power under its charter to issue this two million of preferred or interest-bearing stock, and that its issue to the Louisville & Nashville Railroad Company was a fraud upon the other stockholders of the corporation who held common stock; that the issue was a fraud upon the law, is void, and confers no right upon the Louisville & Nashville Railroad Company to hold and own said stock.

To this amended bill the respondents, the Louisville & Nashville Railroad Company and the South & North Alabama Railroad Company interpose demurrers, and as they raise, substantially, at least, the same questions, they may be considered together.   Many causes of demurrer are assigned, but the questions raised go mainly to the right and title of the Louisville & Nashville Railroad Company to

hold the two millions of stock in question, and to the legal right of the South & North Alabama Railroad Company to issue the preferred interest-bearing stock, which it is alleged it contracted and agreed to issue and did issue to the Louisville & Nashville Railroad Company.

The demurrers also raise the question that even if the issuance of the stock was *ultra vires* and in excess of the powers granted by the charter of the South & North Alabama Railroad Company, that the contract being now a fully executed one, a court of equity will not at the suit of stockholders disturb the contract which has now become the foundation of the rights of the parties.

The question of the statutes of limitation of six and ten years of the state of Alabama is also raised, and held to bar the relief sought by the complainant in his amended bill, and that the complainant is chargeable with laches, and must be held to have acquiesced in the wrongs of which he now complains, and that his conduct since the issuance of the stock in question works an estoppel upon him in the matters as to which he now seeks relief.

Much argument has been made and many authorities cited to show that the South & North Alabama Railroad Company, under what are claimed to be the very ample powers given in its charter, had the right to issue interest-bearing stock at 40 cents on the dollar, as it did do, and that in so doing it did not act *ultra vires* of its charter powers, but within them; that such issue of capital stock was but a mode of borrowing money, which it had express power to do, and that the stock was assets of the corporation, and the directory who were authorized to manage the affairs of the said company had the power to dispose of it upon the best terms possible, to the end that the purpose and object of the corporation might be accomplished.

It is also claimed that as it is not alleged that the directory acted unfairly or in bad faith, and that they did not get all the stock was worth at that time, that a court of equity will not disturb the transaction.

It is not deemed necessary to discuss and pass upon these questions, and others which have been pressed upon the court in argument, because the case must turn upon the proposition that this contract for the issuance of the stock in question is an executed contract made in May, 1871, and by the allegations of the bill the stock was actually issued, delivered, and paid for in the year 1871, and since that time, which is more than 10 years prior to the filing of the amended bill, the respondent, the Louisville & Nashville Railroad Company, have held and voted at the meetings of the stockholders of

the company this stock, and the complainant, a stockholder in the company, took no steps during all this time, and instituted no proceeding to enjoin his company, or in any way to prevent the evils or obtain redress for the wrongs of which he now complains.

Admitting that the South & North Alabama Railroad Company had no authority under its charter to issue this stock, and that the Louisville & Nashville Railroad Company had no authority under its charter to purchase and hold it, still, the charters of the respective companies did not forbid it, and the rule is, that contracts which, though invalid for want of corporate power, yet, if fully executed, they shall remain as the foundation of rights acquired by the transaction. Authorities upon this point are numerous; a few only are cited: *Hitchcock* v. *Galveston,* 96 U. S. 351; *Nat. Bank* v. *Graham,* 100 U. S. 699; *Nat. Bank* v. *Mathews,* 98 U. S. 621; *Spring Co.* v. *Knowlton,* 103 U. S. 60; *Thomas* v. *Railroad Co.* 101 U. S. 82, in which it is said: "The executed dealings of corporations must be allowed to stand for and against both parties when the plainest rules of good faith require it."

I think that reason and authority alike sustain the proposition that a stockholder of a corporation will not be allowed after a reasonable time to disturb and rescind a contract made by his corporation after the same has been fully executed, on the ground that it is *ultra vires,* and in excess of the corporate powers granted by the charter of the corporation. It is to be observed, however, that the case at bar is not simply a case of the exercise of power in excess of that granted in the charter of the corporation, but it is a case in which the matter complained of is the issue by the corporation of preferred interest-bearing stock, guarantied at 40 cents on the dollar to the amount of $2,000,000, for which only $800,000 was paid.

The proposition of the complainant is that such a transaction is in itself a fraud—a fraud upon the other stockholders of the company who hold common stock; and that an issue of such stock is not only voidable, but void—a fraud upon the law. In support of this proposition a number of authorities are cited: *Burke* v. *Smith,* 16 Wall. 395; *Sturges* v. *Stetson,* 1 Biss. 246; *Fosdick* v. *Sturges,* 1 Biss. 256.

The proposition that any action of a corporation which gives to one class of its stockholders a preference over another class in sharing the earnings of the corporation is a violation of the rights of the holders of non-preferred stock, and is illegal, seems to be sustained both upon reason and authority; but may not such illegality be cured by the assent, express or implied, of the holders of non-preferred

stock? Does the case of *Sturges* v. *Stetson*, cited *supra*, which holds such action to be a fraud upon the law, go so far as to hold that it is a fraud which cannot be condoned or cured, and that no conduct on the part of the holders of the non-preferred stock will work an estoppel upon them in making objection to it? What is the true quality, legal, and moral, of the issuance of preferred stock, such as the stock in question, by a railroad corporation with the charter powers of the South & North Alabama Railroad Company? Can it be said that such a transaction involves actual fraud and moral turpitude; that it is in violation of public policy, and fraught with harm to the state? By act of February 26, 1872, the law-making power of Alabama amended the charter of the South & North Alabama Railroad Company, and provided that the "capital stock of said company should be $3,000,000, or more if required, * * * of which the sum of $2,000,000 might be issued as preferred stock, the same to be made up of shares of $100 per share."

I am not now speaking of the effect of this amendment, except to say that certainly the legislature of Alabama did not intend by this act to authorize this railroad company to do that which was a violation of public policy, or to shield the company and its officers from responsibility for having done that which was wrong in itself and an actual fraud.

The phrase "fraud upon the law," used in the opinion of the court in the case of *Sturges* v. *Stetson*, cited *supra*, must mean no more than that the issue of preferred stock, under the circumstances there stated, is in violation of the principle of equality of right among stockholders of a corporation who unite their capital upon equal terms in a common enterprise, and are therefore entitled to share equally and without preference in the profits or avails of the enterprise.

The issue of the preferred stock in question was not forbidden by the charter of the corporation; it was not in violation of any statute law, was no public evil, and did not affect the state to its harm, and if wrong and without legal justification, it was so only because it affected injuriously the private rights of the stockholders of the corporation who held common and non-preferred stock. The fact, then, that this issue of stock was preferred stock, does not take the case out of the rule that non-assenting stockholders in the corporation, if they do not in a reasonable time dissent and take steps to make their dissent effectual, they will afterwards be held to have tacitly assented to the act. To this proposition there is not only reason, as I have attempted to show, but there is authority in the case of *Hazelhurst* v.

*Savannah & C. R. Co.* 43 Ga. 13–67; *Kent* **v.** *Quicksilver Mining Co.* 78 N. Y. 159–191.

These are, both of them, cases in which preferred stock has been issued, and elaborate opinions were delivered by the respective courts, and while in the case first cited the majority of the court held that the directors had power to issue the preferred stock in payment for work done in building the road, yet the court, on page 54, says:

"The question is not whether the directors had power to make it, but whether, after it has been made, after the company has, upon its part, got the benefit of the contract, after the other parties have, upon the faith of it, spent their money, and the company has acquiesced in the act of the directors, either the whole company or a portion of the stockholders can come forward and repudiate the contract?"

On the next page the court answers the question, and says:

"Such acts, though directly contrary to the provisions of the charter, if they be authorized by the stockholders or acquiesced in or confirmed, cannot be avoided after third persons have acted upon them."

The case of *Kent* **v.** *Quicksilver Mining Co.* seems to be still more in point, because there the court held, as I incline to hold here, that there was no power in the directors to issue preferred stock. The court say, on page 184:

"But there remains a serious question—whether, though there was at the outstart a minority of the stockholders who gave no assent to the corporate act, there has not been such tacit acquiescence and delay in action by that minority as to amount to indefensible laches and estoppel upon those who constituted it, and their assigns. In our judgment there has, and we find here a safe place on which to rest our decision of these cases."

So much in point here does the opinion in this case seem to be, that I cannot forbear to make a further quotation from page 185, where the court continues:

"For the lapse of four years, however, there was no action of the company or an individual stockholder to have a judicial declaration that the company had exceeded its powers and that it was invalid. We think that these facts, most of which are set forth in the findings of two of the cases, warrant the conclusion of law thereon, that the stockholders, by acquiescing in the action of the corporation in making the preferred stock, have ratified and assented thereto, and the same is binding upon them by reason of such assent and ratification."

Applying these principles to the case at bar, it is clear that whatever might have been the rights of complainant, if he had promptly and actively sought redress for the wrongs complained of in reference to the issuance of this stock, he cannot now be allowed to disturb the

contract of his corporation by which the stock was issued, delivered, and paid for over 10 years prior to the institution of his suit.

It is claimed that the law of Alabama is different from this, and that by a line of decision coming down to the case of *Chambers* v. *Falkner*, 65 Ala. 451, it has been settled that contracts of corporations which they have no power in their charters to make are void; that the courts cannot enforce them. But none of the cases cited are like the case at bar, in which complainant is not seeking to enforce an executory *ultra vires* contract, but the case is one of an executed contract, where the party paid his money and obtained his stock, and now stands upon the defensive and says that the corporation with which he dealt and the stockholders of the corporation cannot now rescind the contract. Besides that, this is a question of general corporate law, and even if the supreme court of Alabama has held the doctrine claimed, this court would not be bound by the decision, and at most it would be but persuasive.

Complainant invokes section 3242 of the Revised Code of Alabama, which provides:

"In actions seeking relief on the ground of fraud, where the statute has created a bar, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the facts constituting the fraud, after which he must have one year within which to prosecute his suit."

Complainant avers in his bill that "he was ignorant of the fact that said stock issued to the Louisville & Nashville Railroad Company was preferred stock, or that it bore interest, and of the terms and contract by and upon which said stock was issued to the said Louisville & Nashville Railroad Company, until the filing of the answers of the defendants to your orator's original bill; and that your orator had no knowledge or notice of any of the fraudulent acts of the said Louisville & Nashville Railroad Company which are averred and charged in your orator's original bill, or of any facts to put your orator upon inquiry, or create suspicion of such fraudulent acts, until within less than 12 months before said original bill was filed." This statute determines that in the class of cases to which it refers the action shall not be considered as having accrued until the discovery by the aggrieved party of the facts constituting the fraud, and the allegation of complainant's bill is that he was ignorant of these facts until the filing of the answers of defendants to your orator's bill. To bring the allegation within the statute the complainant must mean by saying that he was ignorant of the facts until the filing of the answers, that he then, from the

answers, discovered the facts constituting the fraud. A discovery of facts by an aggrieved party would seem to imply a seeking for knowledge by such party; and the statute certainly was not intended to absolve a party from all effort or diligence to obtain a knowledge of the facts constituting the fraud complained of. The statute was certainly not intended and did not change the rule of equity upon the subject of diligence in such cases, and thus benefit those only who might be willfully ignorant, or who, from carelessness and indifference, should neglect to avail themselves of the means of information upon the subject.

The opinion of the supreme court of Alabama in the case of *Porter* v. *Smith*, 65 Ala. 172, upon the construction of this statute, is in accordance with this view. There must, then, be some disposition and effort to obtain a knowledge of the facts, and that is what the law calls reasonable diligence. The question is not simply what facts the complainant actually knew, but of what facts might he have obtained knowledge had he sought it from the natural sources of information which were at his command.

It is held in numerous cases that the means of knowledge are the same thing in effect as knowledge itself. And in the case of *Wood* v. *Carpenter*, 101 U. S., the supreme court, discussing not merely the Indiana statute but the general principle as well, say, at page 143: "The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence." Applying these rules to the case at bar, the conclusion is inevitable that if the complainant did not actually know that the stock issued was preferred stock, he certainly had within his reach the means of knowledge. He was a stockholder in the company. It was incorporated to build and equip a railroad connecting North and South Alabama,—an enterprise of magnitude, involving the expenditure of large amounts of money. It, like other enterprises of the kind, experienced many vicissitudes and difficulties, as the legislation of the state and the public history of the times abundantly show, and it is difficult to see how he could have remained ignorant of the facts of which he complains, if he had used any diligence at all to obtain knowledge in regard to them. He does not say that he was ignorant that two millions of stock was issued to the Louisville & Nashville Railroad Company, but that he was ignorant that the stock issued was preferred stock, or that it bore interest, and of the terms and contract by and upon which said stock was

issued. It is fair, then, to infer that he knew, in the year 1871, that two millions of stock had been issued to the Louisville & Nashville Railroad Company, and he could hardly presume that at that time the stock of the South & North Alabama Railroad Company was worth par, or that any one would take it at par, and it would seem to be a very natural and reasonable inquiry for any one interested in the matter to make, as to the terms upon which this majority of the stock of the company was taken by the Louisville & Nashville Railroad Company.

Ignorance in regard to that matter is consistent only with carelessness and indifference, superinduced perhaps by the idea that the stock was of little value, (for I think that may be fairly inferred from the allegations of the bill,) that it was not worth a serious thought or an inquiry, and therefore no inquiry was made, though the sources of information were not closed, and if applied to would doubtless have disclosed, not only that the stock was issued, but that it was preferred or interest-bearing stock, and that it furnished the means by which the railroad was being built. If that hypothesis is the true one, it repels all idea of relief, such as is sought in this bill, for Lord Camden's maxim in relation to a court of equity must be borne in mind: "Nothing can call this court into activity but conscience, good faith, and reasonable diligence; where these are wanting, the court is passive and does nothing."

One other point: It is claimed that the statute of limitations does not run here in favor of the Louisville & Nashville Railroad Company as the owner of this stock, because there exists the relation of trustee and *cestui que trust*. But what constitutes the trust, and who is the trustee, in whose favor the statute does not run? The Louisville & Nashville Railroad Company claims to be the owner and holder of this two millions of stock, and to say that it holds the stock in trust for the benefit of the complainant, or any one else, is a confusion of ideas. We are not dealing now on this   nended bill with the property of the South & North Alabama Railroad Company, which is held by the corporation in trust for the benefit of the stockholders of that corporation, and we are not here concerned with the breaches of that trust, which the complainant charges in his original bill upon his own company, and the Louisville & Nashville Railroad Company, which he charges, by virtue of its ownership of a majority of the stock of the South & North Alabama Railroad Company, is enabled to, and, in collusion with the South & North Alabama Railroad Company, is

using and controlling the property and earnings of that corporation in breach of the trust imposed upon it, and in fraud of the rights and interests of the stockholders of the company.

It is a general principle that the property of a corporation is a trust fund for the benefit of the stockholders, in the hands of the corporate body, which is the trustee; but capital stock in the corporation, the certificate or evidence of which is in the hands of its owner, who has paid for it, is neither a trust fund, nor is its owner a trustee; and it is not perceived why statutes of repose do not run to protect the owner in his right to such property, the same as it would in reference to any other class of property.

The result of these views is that the demurrers to the amended bill are sustained.