74 So.2d 457

**Mamie R. WILLIAMS**

v.

**Minnie Lee KITCHENS, et al.**

**7 Div. 204.**

Supreme Court of Alabama.

Aug. 30, 1954.

Young & Young, Anniston, for appellees.

Chas. Douglass, Anniston, for appellant.

PER CURIAM.

This appeal is from a decree sustaining demurrer to a bill in equity. In essence, the bill is one to have either a resulting or a constructive trust in real estate decreed in favor of complainant.

The material averments of the bill, as last amended, are contained in the following statement taken from appellant's brief (the bracketed portions being added by us):

"Mrs. Kitchens [respondent-appellee] and Mrs. Williams [complainant-appellant] formerly lived in Georgia. There, this complainant was married to Mr. Echols, from whom she was later divorced. Of that marriage there was one child, Rufus C. Echols [respondent-appellee]. Later [February 5, 1923], complainant was married to Mr. Williams. Mrs. Kitchens asked that Rufus C. Echols be allowed to live with her, he then being about five years old. Complainant consented. Subsequent to this, Mrs. Kitchens moved to Anniston, having in the meantime become the wife of S. B. Tollison. In the early part of 1926, Mrs. Kitchens, then Tollison, and S. B. Tollison, with Rufus C. Echols, were living in the old office of a manufacturing plant, poorly equipped for a residence, and hard to reach. She was hard pressed. While so located, she became seriously ill, and Mrs. Williams, a daughter, came over to see her. Mrs. Williams was at that time in good financial condition. On that visit, she saw the needs of her mother, and was anxious to see her in better quarters. Complainant stated to her mother in substance that she would like to purchase a residence in Anniston for the mother to use, during her lifetime, the property to then pass to complainant. This met the hearty approval of respondent Kitchens, she agreeing that, if complainant furnished the money, she, Kitchens, would have deed made to herself for life, with provision for the remainder estate to go to complainant. Complainant and others looked around for a suitable residence, and found one located at 1800 West 11th Street, Anniston, Alabama, owned by Mr. Boozer, the price being $1800.00 When complainant returned to Georgia, she mailed check for the money to Mrs. Kitchens, leaving the entire matter to be handled by her. Mrs. Kitchens breached the agreement in that, instead of having the deed made in accordance with the agreement, she had it made to herself as M. L. Tollison, and to S. B. Tollison. [Said deed being dated February 20, 1926, and of record in Book 288, page 458, Probate Office, Calhoun County, Alabama.] Right after the place was purchased, Mrs. Kitchens, then Tollison, her husband, S. B. Tollison, and Rufus C. Echols moved in the house, and Mrs. Kitchens and Rufus C. Echols have lived in that residence since that time, and are occupying it now, it having a present value of $5000.00.

"The bill shows that complainant loved her mother, had the utmost confidence in her, believed her mother would carry out the agreement, and, under this belief, and in reliance upon the promise, she turned the execution of the purchase over to her mother, and did not follow with check to see if the agreement had been complied with.

"The bill shows that complainant moved from Carrolton, Georgia to An-

niston in or about 1930, and from then on, was frequently in company of her mother and her son, Rufus C. Echols, but complainant was not advised of the kind of deed which was made until July 1945. The bill shows that on this date, complainant and respondent Kitchens had a conversation concerning this property in which Mrs. Kitchens sidetracked the issue by telling Mrs. Williams that she, complainant, was provided for in a will. Complainant got access to the will, and found from it that the property was devised to Rufus C. Echols for his life; that complainant stated to her mother in substance that, under the agreement, she was entitled to a remainder interest in this property. Respondent Kitchens showed embarrassment, and admitted that the remainder estate should have been conveyed to complainant, and agreed to convey it to her, but said she could not do anything about it until she got Tollison out of the picture. The bill shows that respondent Kitchens got divorce from Tollison on July 6, 1946, she resuming her former name of Kitchens, and on July 5, 1946, Tollison quitclaimed his interest in said property to respondent Kitchens, the property being described in paragraph 6 of amendment F. The bill also shows that subsequent to that time, in all conversations complainant had with her mother on this subject, respondent Kitchens recognized complainant's right to the remainder estate, and from time to time promised that she would make to complainant a deed to the remainder estate.

"It is averred in said bill that under deed of August 3, 1949, Minnie Lee Kitchens conveyed this property to Rufus C. Echols, it being recorded in Book 646, page 49, Probate Office, Calhoun County. It is shown in said amendment F that, sometime before this transfer, complainant had discussions with Rufus C. Echols, advised him in substance of her remainder interest in this property, and of her mother's promise to convey this remainder estate to complainant.

Amendment F shows that on or about June 12, 1952, complainant was passing the residence involved in this suit, and observed some improvements, which aroused her suspicion; that she promptly went to the office of the probate court, and got someone there to see if any conveyance had been made. In this way, on June 12, 1952, she learned about this deed from her mother to Rufus C. Echols. It is shown that she then got busy, put pressure on her son to right this wrong. She avers in amendment F that he offered to pay her $1300.00, $700.00 cash, and the balance at a later date. She avers that she agreed to quitclaim her interest to him for that sum if he would sign an agreement to provide for respondent Kitchens and furnish her a place to live for the rest of her life. She avers that he refused to do this, and then this suit was filed.

"In paragraph 17 of amendment F the bill avers that Rufus C. Echols acquired this deed through undue influence, or, in the alternative, through connivance between him and his grandmother, and in the bill it is shown that he was the dominant party.

"It is also shown in amendment F that for sometime prior and up to September 30, 1952, respondent Kitchens received relief from the Calhoun County Welfare Department; that, following the passage of the act for support from relatives, the welfare department sent notice to the relatives of Minnie Lee Kitchens; when some of the relatives failed to respond, the relief was cut off on said date. During that time, Mrs. Kitchens was living in the residence she had deeded to Rufus C. Echols.

"Amendment F charges fraud, and asks for specific performance of the contract. Amendment G asks, in the alternative, for a decree establishing a resulting trust in favor of complainant; that the trust be annulled and the remainder estate vested in complainant. Amendment H, in the alternative, asks,

if she is not entitled to relief under amendment F, nor under amendment G, that she have a judgment for that part of the $1800.00 covered by remainder interest in this property, with interest from that date to this date; asking that the court retain the case, establish a lien upon the property involved, and direct that it be sold for the payment of the indebtedness."

The question presented is whether the bill sufficiently shows, against a demurrer to it, facts which overcome the effect of the long delay in filing it. As shown from the facts stated above, the right to sue in equity arose upon the execution of the deed February 20, 1926, in violation of the instructions to Mrs. Kitchens by complainant in respect to the manner of making the investment. This bill was originally filed July 9, 1952. That was of course more than twenty years after the claim arose.

In order to determine the question presented we must first ascertain the nature of the limitation applicable to such a claim. That is to say, whether it is controlled by the ten year statute of limitations, Title 7, § 20, Code—or by the equitable rule of prescription which is twenty years, or by laches also an equitable principle. It is to be noted that under the instructions to Mrs. Kitchens, the title of the lot was to be taken in her for her life, with remainder in complainant. So that the nature of complainant's equity is to enforce a constructive trust in her favor operative only in remainder after the death of Mrs. Kitchens, the life tenant. Hawkins v. Sanders, 260 Ala. 585, 72 So.2d 81(15). To grant the relief sought does not result in obtaining the present enjoyment of the property or any part of it or its possession in whole or in part. Complainant does not claim the right in equity to such present use of it or its present possession in any respect.

There is a theory advanced that it is barred by the ten year statute of limitations, for that it is in the nature of a suit for the recovery of land, its tenements or hereditaments, or the possession thereof. But we have many cases which refute the theory, and which we will undertake to analyze.

"Until the termination of the life estate the remainderman had no right of action for the recovery of the possession of the land. The statute of limitations *can never run against the remainderman during the existence of the life estate,* for the reason that no cause or right of action is in the remainderman, nor can there be any adverse possession as to him for like reason. There can be no ouster of a remainderman, who has neither the possession nor right of possession, during life of the life tenant."—Bolen v. Hoven, 143 Ala. 652, 39 So. 379.

The foregoing is quoted in Winters v. Powell, 180 Ala. 425, 431, 61 So. 96, 98, and on pages 430, and 98 respectively, the opinion refers to Woodstock Iron Co. v. Fullenwider, 87 Ala. 584, 6 So. 197, as holding that "there may be cases in which such a bill, so timed, is necessary to prevent the destruction of the rights of reversioners or remaindermen by the *lapse of 20 years under the doctrine of prescription.*" It is also said, 180 So. on page 431, 61 So. on page 99: "Prior to the death of Mrs. Powell (the life tenant) there was never a time when they could have had judgment or decree operative presently upon the possession or enjoyment of the property."

The case of Robinson v. Pierce, 118 Ala. 273, 24 So. 984, 45 L.R.A. 66, is also cited in Winters v. Powell, supra, where it was said with reference to the Robinson case: "While the proceedings in the probate court for the sale of lands against which the plaintiff there claimed were void in law, they were effective to vest an equitable title in the purchaser, and put upon the remainderman the necessity of doing equity as a condition precedent to the exercise of equity powers". It was also said in the Robinson case, 18 Ala. on page 306, 24 So. on page 993: "Here, the complainants, professing no right but that of an equity, capable at any time within 20 years of enforcement, call upon the respondents to answer". "A purchaser from a trustee, in contravention of the trust, in no sense, becomes thereby an express trustee. He becomes a trustee, *in invitum,* by construction of law. He

is a constructive trustee. He holds actually in his own right, and in hostility to the world; but a court of equity, * * * will 'force a trust upon his conscience,' and compel him to perform it or answer for its fruits." It is there said *prescription of twenty years is the limit.*

It is said in Reynolds v. Love, 191 Ala. 218, 226, 68 So. 27, 29; "Complainants being remaindermen, the statute of limitations did not commence to run against them until the death of Caroline, the life tenant". That was a suit in equity.

And in Blakeney v. Du Bose, 167 Ala. 627, 638, 52 So. 746, 749: "The children of Robert H. Blakeney being * * * remaindermen * * * after the death of John Blakeney, the testator, there was never a moment of time during the period from the testator's death in 1862 until the death of Robert H. Blakeney in May, 1908, when the statute of limitations could begin to run."

■ It is thoroughly well settled that the remainderman is not affected by the statute of limitations during the life of the life tenant.

In the case of Lewis v. Belk, 219 Ala. 343, 122 So. 413, 414, a bill was filed by the heirs of the grantor in a conveyance for the purpose of reforming a deed made to another, so that it would be for the life of the other with remainder to complainants. The defense was laches. The Court observed: "It is of course the rule that the *statute of limitations can never run against the remainderman during the existence of the life estate,* for until the termination of the life estate he has no right of action for recovery of the possession of the land." It was also said that while vested remaindermen have an equitable right before the death of the life tenant, as well as after that event, to seek the relief here claimed, quoting from the Robinson case, supra, that, " 'It is to this equitable proceeding to acquire a title that *staleness of demand* is pleaded' ".

In the case of Herren v. Beck, 231 Ala. 328, 164 So. 904, 906, a bill was filed to set aside a deed made by remaindermen for

causes there referred to, the Court stated "there is a well-defined principle of our cases to the effect that when a remainderman's title passes out of him, but subject to his equitable right to have it reinvested or to be subjected to a lien or trust, such right and duty to sue occurs as soon as the instrument is executed, not affected by the circumstance of its recordation. That duty is not postponed because the grantor in the instrument does not possess the immediate right of possession, but is subject to a life estate. * * * So that the period of time necessary to complete the *bar of prescription* is not in that event affected by the period of such life estate." The Court then cites the authorities hereinabove referred to and observed that "*twenty years is the fixed prescription period as to one not in possession."*

Also in the recent case of Merrill v. Merrill, 260 Ala. 408, 71 So.2d 44, the same authorities are cited, and the same principle is referred to, the Court observing that the principle of laches as well as prescription has application. To like effect is Wragg v. City of Montgomery, 245 Ala. 362, 17 So. 2d 173.

The distinction is drawn in many of our cases between a situation where on the face of the transaction it shows that the life tenant has undertaken to convey the estate in remainder or otherwise to affect it, there is no burden upon the remainderman to take any action in respect thereto as long as the life tenant is alive, and one where the interest of the remainderman in fact passes out of him either by his own act or some other procedure, subject to a right in equity to cancel the title so conveyed, it becomes his duty to take action as soon as the transaction occurs. In the former instance, there being no duty resting upon him, no limitation of any sort, laches or prescription begins to run against him. Ussery v. Darrow, 238 Ala. 67, 188 So. 885; Ward v. Chambless, 238 Ala. 165, 171, 189 So. 890; Teal v. Mixon, 233 Ala. 23, 169 So. 477; Dallas Compress Co. v. Smith, 190 Ala. 423, 67 So. 289.

In respect to the latter status above posed, which requires action on the part of a re-

346

mainderman, the cases declare that the principle applicable to him is laches or prescription. In such a situation it is said in Ussery v. Darrow, supra, [238 Ala. 67, 188 So. 889], that the remaindermen "were bound to act promptly to acquit themselves of laches." And in Ward v. Chambless, supra, 238 Ala. at page 171, 189 So. at page 894, with respect to that status, it is said: "There are circumstances which require him to act pending the particular estate in order that he may escape the charge of laches", citing the authorities above referred to.

In the case of Dallas Compress Co. v. Smith, supra, the circumstances did not require court action on the part of the remaindermen within the principle declared above, but under those circumstances reference was made to the fact, as in our later cases, that the remaindermen were not bound to take action but were privileged to do so, and differentiated the situation from one where there was a duty on the part of the remaindermen to take action. Reference was made in several parts of the opinion to the fact that the statute of limitations has no application to remaindermen, and was not applicable to either situation; and with respect to the status wherein the remainderman should act, his delay in doing so during the life of the life tenant "operates simply as evidence of assent to, or acquiescence in, an adverse status. * * * But the possession of land by a tenant for life cannot be adverse to the remainderman" [190 Ala. 423, 67 So. 292].

In our case of Wise v. Helms, 252 Ala. 227, 40 So.2d 700, the question arose with reference to a deed executed by Cain in his lifetime to his wife, reciting that the deed would not be effective until after his death. A bill was filed twenty-one years after the deed was executed and seventeen years after the grantor died. Without the deed the wife had a life estate. His heirs were the complainants and sought to set aside the deed on account of the mental incapacity of the grantor. The trial court denied relief to complainants on the ground that they were barred by laches though the life estate was in effect. This Court on appeal treated the question as being controlled by laches

as well as the twenty year prescription period, and went into the sufficiency of the evidence as applied to the principle of laches as defined in our cases. We held that under such circumstances, prescription and laches will run from its date, unless some other circumstance relieves the heirs of the burden,—citing our cases referred to above.

It is true in a later case of Merrill v. Merrill, supra, we corrected an inadvertent statement in Wise v. Helms with respect to notice as affecting prescription, but that is not here material. It is sufficient to observe that in that case and in all of our cases in which the court dealt with limitations affecting the rights of remaindermen, where there is a duty upon the remaindermen to take steps, the limitation was treated as one of prescription or laches. We held that if twenty years have expired since the time when complainants had the opportunity to institute such a suit and when there was a duty upon them to do so and the opposite party has not sufficiently recognized the existence of complainants' right that right was barred by the rule of prescription. The statute of limitations seems never to have been supposed to apply to such a proceeding by a remainderman while the life tenant lived.

In the present case the insistence is made that the statute of limitations has application based upon reasoning from the premise that under ordinary circumstances a suit in equity to set aside a conveyance of land for fraud or other cause when the grantee is in possession, or to reform a deed to land when the grantee is in possession, or to enforce a resulting or constructive trust on it when the grantee is in possession, the statute of ten years applies. Smith v. Hart, 259 Ala. 7, 65 So.2d 501; Glass v. Cook, 257 Ala. 141, 57 So.2d 505; Knowles v. Canant, 255 Ala. 331, 51 So.2d 355; Barnett v. Waddell, 248 Ala. 189, 27 So.2d 1; Woods v. Sanders, 247 Ala. 492, 25 So.2d 141; Van Antwerp v. Van Antwerp, 242 Ala. 92, 100 (25), 5 So.2d 73; Drummond v. Drummond, 232 Ala. 401, 168 So. 428; Miles v. Rhodes, 222 Ala. 208, 131 So. 633; Van Ingin v. Duffin, 158 Ala. 318, 48 So. 507; Washington v. Norwood, 128 Ala. 383,

30 So. 405; Stoutz v. Huger, 107 Ala. 248, 18 So. 126.

In all of the foregoing cases the complainants were seeking to obtain the immediate possession of the land and could not sue at law because their claim was equitable and not recognized in a court of law, but they came into equity only because their rights were recognized there and not at law. So that it was held in those cases that such a suit was essentially one for the recovery of land in equity rather than at law and, therefore, the statute of limitations was applicable.

But such reasoning cannot apply when the complainants are not seeking possession of land, but are seeking only to establish their title so as to enable them to sue at law for the possession when their possessory right shall come into being.

The idea is expressed that the ten year statute of limitations has application by *its terms* to enforce a constructive or resulting trust even though complainant seeking that relief is a remainderman and cannot sue for the immediate possession of the land during the period in question, for that section 20, Title 7, Code, is that suits are barred unless commenced in ten years when they are "for the recovery of lands, tenements, or hereditaments, or the possession thereof". But a suit for the recovery of land is for the immediate enjoyment of its possession, Cofer v. Schening, 98 Ala. 338, 13 So. 123,—and will not lie for any property whereon no right of entry exists. The interest sought must be visible and tangible so that possession can be delivered by the sheriff on execution. 28 C.J.S., Ejectment, §§ 5, 6, pp. 852, 853, notes 60, 88 and 89.

Tenements and hereditaments are terms descriptive of the property sought to be recovered. A mineral interest in land may be recovered in ejectment as a corporeal hereditament. Louisville &. Nashville R. R. Co. v. Massey, 136 Ala. 156, 33 So. 896; Lake v. Sealey, 231 Ala. 466(7), 165 So. 399. Standing timber on land is a part of it and is recoverable in ejectment at law. Mt. Vernon Lumber Co. v. Shepard, 180 Ala. 148, 60 So. 825; Irwin v. Shoemaker,

205 Ala. 13, 88 So. 129. Likewise are houses constituting a permanent attachment to the freehold. Sullivan v. Lawler, 222 Ala. 628, 133 So. 911. Section 83, Title 7, Code, provides that the bare right to possession of land now authorizes its recovery. The terms tenements and hereditaments have never been applied to the establishment of an equitable claim effective to confer a right of entry at some future time or upon some future event. The statute refers to a recovery of the immediate possession of the property sued for, Cofer v. Schening, supra, whether it is the land itself or a tenement or hereditament of it or its mere possession.

The present suit is for the purpose of having an equitable claim in remainder adjudged and decreed, and not for a recovery of its possession. It is not a suit for the recovery of land, tenements or hereditaments, or the possession thereof, and it is not barred by the statute of limitations of ten years. The question therefore is whether it shows on its face that it is barred by prescription of twenty years or the indefinite period of laches.

The original bill was filed July 9, 1952. It shows that the deed which is under attack was made February 20, 1926. The bill therefore was filed more than twenty years after the right to file it accrued, and it was barred by the prescriptive period of twenty years unless it sufficiently alleges a recognition of complainant's right here asserted within said period of twenty years after the right arose, and which was itself within twenty years before the bill was filed. The question of whether complainant had notice of the facts which gave rise to her equity is not material in the application of it to that period. Merrill v. Merrill, 260 Ala. 408, 71 So.2d 44.

The inquiry is whether the allegations of the bill show that Mrs. Kitchens sufficiently recognized her duty to perform the trust sought to be imposed, and that this occurred within twenty years from the execution of the deed to her and her husband on February 20, 1926. That deed had been made to her and her then husband (Tolli-

son) in alleged violation of the trust imposed in her. She alleges in the amended bill that it was in July 1945 when the matter was first mentioned by her to Mrs. Kitchens (then Mrs. Tollison), and that she admitted that the remainder estate should have been conveyed to complainant and agreed to do so, but could not do so until she got Tollison "out of the picture". That on July 5, 1946 Tollison made a quitclaim deed to her, and she was divorced from him on July 6, 1946. This was more than twenty years after February 20, 1926.

So that we revert to the question of whether the bill sufficiently shows such recognition within twenty years after February 20, 1926. Since the bill was filed more than twenty years after that date, the duty was on complainant to allege facts showing such recognition if the bill is to be held free from demurrer. Kilgore v. Gamble, 253 Ala. 334, 44 So.2d 767; McArthur v. Carrie's Adm'r, 32 Ala. 75.

The strict rule of twenty years is a firm prescriptive period. There was occasion for its declaration in McArthur v. Carrie's Adm'r, supra. In that case after full consideration, it was said that the presumption is prima facie and may be overturned by "some excuse, independent of original defect of title * * * given for the seeming long acquiescence. We cannot now be more definite."

In Harrison v. Heflin, 54 Ala. 552, the twenty year period was said to be without "recognition or admission within that period * * * as a continuing, subsisting, and undischarged trust, a presumption of settlement arose, operating as a positive bar to such proceedings" to compel settlement of an administration in the probate court.

And in Coyle v. Wilkins, 57 Ala. 108, it is said that when a mortgagor has been in possession of the land twenty years without the payment of interest or an admission of the existence of the mortgage debt, the rights of the mortgagee are barred by prescription.

In Snodgrass v. Snodgrass, 176 Ala. 276, 280, 58 So. 201, 202, it is said: "The concensus of opinion in the present day is that such presumption is conclusive, and the period of twenty years, without some distinct act in recognition of the trust, a complete bar; and, as said in an early case, 'the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them, that it conduces to peace of society and the happiness of families, "and relieves courts from the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible." ' * * ". Hendley v. First National Bank of Huntsville, 235 Ala. 664, 180 So. 667.

That is the reason for the rule, but those conditions are not requisite to its application. Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820. But they are essential to an application of the principle of laches. Merrill v. Merrill, supra; Woods v. Sanders, 247 Ala. 492, 25 So.2d 141; Craig v. Root, 247 Ala. 479, 25 So.2d 147. And as held in Braun v. Pettyjohn, 176 Ala. 592, 58 So. 907, 908, prescription is distinguishable from laches which has no fixed period as a limitation but is dependent upon the fact that " 'the transactions have become so obscured by time, and the loss of evidence, as to render it difficult to do justice.' " But the twenty year period must have expired without a payment on the debt (if a debt is involved) or other acknowledgment of the mortgage during that period (if a mortgage is involved). Of course a payment on the debt is an acknowledgment as of that day. In that case the mortgagor made a deed to another reciting the existence of the mortgage. That recital was a sufficient recognition.

The bill in the instant case shows that Mrs. Kitchens is still living and is a party to the suit. It does not show the death of any person familiar with the facts or the loss of evidence by the lapse of time. So that the twenty year period of prescription may be applicable, but not laches so far as the bill shows.

In the case of Goodwyn v. Baldwin, 59 Ala. 127, a bill was filed to foreclose a mortgage some thirty years after the right accrued. The question was the sufficiency of the bill on demurrer to avoid the effect of the long delay. The bill alleges that Raoul (the mortgagor) admitted up to his death the existence of said mortgage as a valid incumbrance on the lands therein conveyed. It was said that such was a "very vague averment". When, where, to whom, and how often admitted, the bill fails to show. Such averment is too indefinite to overcome the presumption of payment." This opinion was analyzed on rehearing in Hendley v. First National Bank of Huntsville, 235 Ala. 664, 180 So. 667, 668. In the Hendley case a mortgage had been on record over twenty years, but payments had been made not shown by the record. The question was the right of a purchaser to presume that prescription destroyed it, when in fact payments had kept it alive. It was held to be alive, though unknown to the purchaser. This rule has now been changed by statute section 174, Title 47, Code. In headnote 13 in the report of the Hendley case it is said that the recognition must be "by partial payments or an unconditional promise in writing"; and observed that "by statutes in force from our early history no acknowledgment will suspend the running of the statute of limitations save partial payments on the debt or an unconditional promise in writing", citing section 8964, Code of 1923 (section 40, Title 7, Code of 1940). But it was also said that this statute has not been applied to the equitable rule of repose. There must be a clear recognition of the trust within the twenty year period. Hendley v. First National Bank of Huntsville, 235 Ala. 664, 670, 180 So. 667. The case of Goodwyn v. Baldwin, supra, seems to supply the formula to be observed in pleading recognition.

The averment must be precise as to the place where it occurred, when it was done, to whom it was made, and how often and when and where repeated within the first twenty years after the right accrued. We think the averments of the bill in that respect, as set out above, are too vague and uncertain to overcome the presumption that complainant has no such claim as that sought to be set up in the bill.

The decree sustained the demurrer to the bill without specifying the ground of it which induced the ruling. We think it could be based on the insufficiency of the bill to overcome the presumption resulting from the prescriptive period of twenty years elapsing after the right to sue arose. The decree should be affirmed.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, STAKELY, MERRILL and CLAYTON, JJ., concur.

GOODWYN, J., concurs in the result.

GOODWYN, Justice (concurring specially).

It seems to be the theory of the majority opinion that the statute of limitations, Code 1940, Tit. 7, § 20, applies only to possessory actions and that, since the complainant is not entitled to the immediate possession of the property, the statute of limitations is inapplicable. My view is that the bill affirmatively shows on its face that the suit is barred by the statute of limitations of ten years, § 20, Tit. 7, supra.

Section 18, Tit. 7, Code 1940, provides as follows:

"All other civil actions, in law or *equity,* must be commenced after *the cause of action has accrued* within the period prescribed in this chapter and not afterwards, unless otherwise specifically provided for in this Code." [Emphasis supplied.]

Section 20, Tit. 7, Code 1940, supra, prescribed the following limitation:

"The following must be commenced within ten years:

\*   \*   \*   \*   \*   \*

"Actions for the recovery of lands, tenements, or hereditaments, or the possession thereof, except as herein otherwise provided. \* \* \*."

It is well established by the decisions of this court that "in a suit of this kind, the statute of limitations is ten years as in the nature of a suit for the recovery of land since land is the subject matter of the suit." Knowles v. Canant, 255 Ala. 331, 334, 51 So. 2d 355, 358; Barnett v. Waddell, 248 Ala. 189, 195, 27 So.2d 1; Woods v. Sanders, 247 Ala. 492, 495, 25 So.2d 141; Miles v. Rhodes, 222 Ala. 208, 209, 131 So. 633. Cf. Smith v. Hart, 259 Ala. 7, 9, 10, 65 So.2d 501; Van Ingin v. Duffin, 158 Ala. 318, 321, 48 So. 507, 132 Am.St.Rep. 29.

Also, "in this jurisdiction it is a settled rule that the statute of limitations may be set up in equity by demurrer where the bill shows that the cause of action stated in the bill is prima facie within the bar of the statute of limitations, or offensive to the rules which courts of equity adopt for the discouragement of stale demands." State, for Use of Houston County v. United States Fidelity & Guaranty Co., 239 Ala. 445, 447, 195 So. 426, 427; Van Ingin v. Duffin, 158 Ala. 318, 320, 48 So. 507, 132 Am.St.Rep. 29; Lovelace v. Hutchinson, 106 Ala. 417, 424, 17 So. 623.

A cause of action "accrues" when a suit may be maintained thereon; whenever one person may sue another. As stated in 1 Am. Jur., Actions, § 60, p. 451:

"In determining whether an action \* \* \* has been so tardily commenced as to be barred by the Statute of Limitations, it becomes necessary to determine when the cause of action accrued. This is determined by ascertainment of the time when the plaintiff could first have maintained his action to enforce his cause of action."

See, also, Esslinger v. Spragins, 236 Ala. 508, 513, 183 So. 401; Van Ingin v. Duffin, 158 Ala. 318, 321, 48 So. 507, 132 Am.St. Rep. 29, supra. In the Esslinger Case [236 Ala. 508, 183 So. 405] it is said that "'the cause of action accrues as soon as a party in whose favor it arises is entitled to begin and prosecute an action thereon.'"

There seems to be no question that complainant could have filed her bill immediately after the execution and delivery of the deed to her mother and stepfather in February, 1926. Her right to sue originated at that very moment. It was then and there that her cause of action accrued, and the statute of limitations against its assertion commenced to run at that time. Thornton v. Rodgers, 251 Ala. 553, 557, 38 So.2d 479; Wragg v. City of Montgomery, 245 Ala. 362, 364, 365, 17 So.2d 173; Herren v. Beck, 231 Ala. 328, 331, 164 So. 904; Lewis v. Belk, 219 Ala. 343, 344, 122 So. 413; Bellamy v. Pitts, 216 Ala. 40, 42, 112 So. 328; Dallas Compress Co. v. Smith, 190 Ala. 423, 67 So. 289; Haney v. Legg, 129 Ala. 619, 627, 30 So. 34, 87 Am.St.Rep. 81; Robinson v. Pierce, 118 Ala. 273, 302–306, 24 So. 984, 45 L.R.A. 66, 72 Am.St.Rep. 160.

As thus stated in Haney v. Legg, supra [129 Ala. 619, 30 So. 36]:

"The principle applicable to this phase of the case is clearly stated in a note in 2 Perry, Trusts (5th Ed.) to section 865 in this language: 'When a trust is imposed by law, as in the case of a resulting trust, the statute [of limitations] begins to run in favor of the holder of the legal title against the equitable owner at the time of the conveyance, if there is no recognition of the cestui's rights; if his rights are recognized, then at the time when the holder of the legal title begins to hold adversely.'"

The following is quoted from Herren v. Beck, supra [231 Ala. 328, 164 So. 906]:

"There is a well-defined principle of our cases to the effect that when a remainderman's title passes out of him, but subject to his equitable right to have it reinvested or to be subjected to

a lien or trust, such right and duty to sue occurs as soon as the instrument is executed, not affected by the circumstance of its recordation. That duty is not postponed because the grantor in the instrument does not possess the immediate right of possession, but is subject to a life estate. He must not wait until the life estate terminates, without being chargeable with the time intervening, since his action does not affect his possession, but his title. So that the period of time necessary to complete the bar of prescription [and I add: or the bar of the applicable statute of limitations] is not in that event affected by the period of such life estate. Lewis v. Belk, 219 Ala. 343, 122 So. 413; Robinson v. Pierce, 118 Ala. 273, 302, 303, 304, 305, 24 So. 984, 45 L.R.A. 66, 72 Am.St.Rep. 160; Lowery v. Davis, Ala.Sup., 8 So. 79; Lansden v. Bone, 90 Ala. 446, 8 So. 65; Woodstock Iron Co. v. Fullenwider, 87 Ala. 584, 6 So. 197, 13 Am.St.Rep. 73."

From Wragg v. City of Montgomery, supra, is the following [245 Ala. 362, 17 So.2d 175]:

"We also quote the following from the case of Ussery v. Darrow, 238 Ala. 67, 188 So. 885, 889:

" 'We have a line of cases following Woodstock Iron Co. v. Fullenwider, 87 Ala. 584, 6 So. 197, 13 Am.St.Rep. 73, declaring a principle stated in Herren v. Beck, 231 Ala. 328, 164 So. 904, 906, as follows: "When a remainderman's title passes out of him, but subject to his equitable right to have it reinvested or to be subjected to a lien or trust, such right and duty to sue occurs as soon as the instrument is executed," and during the existence of the precedent estate.

" 'The principle is distinguishable from one which applies when a life tenant undertakes to convey the remainder, but it does not have that effect because the chain of title shows that he only has and can only convey only a life estate. A remedy under such circumstances by the remainderman to clear the situation is available but not obligatory, because the public need not be misled. Dallas Compress Co. v. Smith, 190 Ala. 423, 67 So. 289; Teal v. Mixon, 233 Ala. 23, 169 So. 477. But we are not willing to apply that principle to a situation where the records and chain of title are all such as that they not only purport to pass the entire fee and all interests, but taken alone in fact do so, and when the only matter which will create a different result is collateral, not shown or suggested by the chain of title, nor public records judicially known, or to which the record refers. There is then an inchoate right which must be asserted to prevent the title from passing in fact as it purports to pass on its face. It resembles a cloud on a title. King v. Artman, 225 Ala. 569, 144 So. 442.' "

It is clearly shown by the bill that it was not until July, 1945, more than 19 years afterwards, that anything at all was done or said concerning complainant's claim. Nothing is shown to have occurred during all that time, either by spoken word or by action, in any way recognizing such claim. Certainly, it cannot be successfully contended that complainant must await the death of her mother, who, according to complainant's position, has the life estate, before bringing suit. Nor can it be successfully maintained that complainant's cause of action "accrued" upon discovery of the alleged fraud.

The circumstance that complainant, suing in equity to acquire title as remainderman, is not entitled to the immediate possession of the property, since her mother, the admitted life tenant, is still living, does not, in my opinion, stop the statute of limitations from running against her right to assert such title until the falling in of the life estate. In the case before us, complainant has no title and no possibility of becoming invested with one, except by suing in equity to acquire it. It is to this equitable proceeding to acquire a title that the limitation is applicable. As stated in Robinson v. Pierce, 118 Ala. 273, 305, 306, 24

So. 984, 993, 45 L.R.A. 66, 72 Am.St.Rep. 160:

"What conceivable reason can there be for exempting a person from this rule of diligence who sues in equity to acquire an estate in remainder or reversion, any more than one suing in equity to acquire an estate in possession? His decree, when obtained, establishes perpetually his title, entitling him to maintain his action for possession whenever the event entitling him to possession transpires; and no lapse of time after recovery of the decree, and before the possessory right accrues, could affect his right to recover possession upon the happening of the latter event."

As I view it, it does not matter when complainant's right of possession accrues, for until title in her is decreed by a court of equity she can never have a right of possession, or an action therefor, at law. As further stated in Robinson v. Pierce, supra, at pages 303, 304 of 118 Ala., at pages 992 of 24 So.:

"The suit in equity is for the purpose of *acquiring an estate* which will give a possessory right, enforceable by action at law, at the time which, by the effect of the grants as they are decreed to exist, such right would arise. The power of the chancellor, upon establishing this estate, on petition, to put the complainants in possession, is purely auxiliary, incidental—not the primary purpose of, nor forming a part of the equity of, the bill. The question of when or on what contingency the complainants may become entitled to possession cannot possibly concern the relief sought by the bill."

Insistence is made that § 42, Tit. 7, Code 1940, rather than § 20, Tit. 7, supra, is applicable here. Section 42 provides as follows:

"In actions seeking relief on ground of fraud.—In actions seeking relief on the ground of fraud where the statute has created a bar, the cause of action must not be considered as having ac-crued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his suit."

Complainant takes the position that the fraud was not discovered until July, 1945, and that, therefore, until at least one year thereafter there could be no effective bar to the suit; and that, from July, 1945, to the time of filing the bill, the time limitation for commencement of the suit was tolled because the respondents, after discovery of the alleged fraud, from year to year, recognized and acquiesced in complainant's claim. But there is no averment showing, during the 19 years from 1926, 1945, any concealment by respondents, or either of them, of the alleged fraud, or of conduct on their part "calculated to mislead or to prevent inquiry and lull into repose". The averments show nothing more than passiveness and mere silence on the part of the respondents from the time of execution of the deed in 1926 until actual discovery of the alleged fraud in 1945. This court, in discussing § 4852, Code 1923, now § 42, Tit. 7, supra, had this to say in Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 329, 94 So. 606, 611:

"The statute referred to does not require actual notice, since a fraud is discovered within the contemplation of the law when it is readily discoverable or when a party is put upon notice thereof. Ivy v. Hood, 202 Ala. 121, 79 So. 587; Veitch v. Woodward Iron Co., 200 Ala. 358, 76 So. 124, authorities collected in Gill v. More, 200 Ala. 511, 520, 76 So. 453; Gamble v. Black Warrior Coal Co., 172 Ala. 669, 55 So. 190; Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807. And it is established that a deed or other conveyance of land in this state becomes effective as constructive notice from the moment of recordation. Chapman & Co. v. Johnson, 142 Ala. 633, 38 So. 797, 4 Ann. Cas. 559."

Here, the bill affirmatively shows that the 1926 deed was recorded in the County Probate Office. (Although there is no specific

averment as to the date of its recordation, I assume, from the references in the bill to the deed, that it was placed on record shortly after its execution.)

It is also stated in the Peters Mineral Land Co. case, supra, as follows:

"The provisions of Code [1923], § 4852 [Code 1940, Tit. 7, § 42], are construed to mean that mere ignorance on the part of the alleged defrauded party is not sufficient to prevent the running of the statute, but to mean ignorance that is superinduced by the fraud of the respondent in the form of active concealment, conduct calculated to mislead, or to prevent inquiry and lull into repose. Ivy v. Hood, supra; Van Ingin v. Duffin, 158 Ala. 318, 48 So. 507, 132 Am.St.Rep. 29. It is not averred that any such act, conduct, or guilty silence was employed or intervened in this case to defeat the operation of the statute."

The last quoted sentence is of peculiar application to the bill now under review. See, also, the following cases: Moss v. Davitt, 255 Ala. 513, 517, 52 So.2d 515; Fletcher v. First Nat. Bank of Opelika, 244 Ala. 98, 103, 104, 854, 11 So.2d 854; Van Antwerp v. Van Antwerp, 242 Ala. 92, 100, 5 So.2d 73; Williams v. Bedenbaugh, 215 Ala. 200, 204, 110 So. 286; Underhill v. Mobile Fire Department Ins. Co., 67 Ala. 45, 51; Porter v. Smith, 65 Ala. 169, 172; Taylor v. South & N. Ala. R. Co., C.C., 13 F. 152, 159.

In the Underhill Case, supra, this court, speaking through Brickell, C. J., said:

"There is no proper averment that the ignorance was superinduced by fraud, or by more than the mere passiveness of the respondents. Ignorance of right in the party complaining, there being no more than passiveness, mere silence, on the part of his adversary, cannot be engrafted as an exception on the statute of limitations, without a destruction of its wise policy, and without an encouragement of mere negligence."

I concur in the affirmance but would base affirmance on the ground that the bill

affirmatively shows on its face that complainant's right of action is barred by the statute of limitations of ten years, § 20, Tit. 7, supra.