113 So.2d 507

James LACEY

v.

EDMUNDS MOTOR COMPANY, Inc. et al.

6 Div. 239.

Supreme Court of Alabama.

June 25, 1959.

Kingman C. Shelburne, Birmingham, for appellant.

Dempsey F. Pennington, Birmingham, for appellee Edmunds Motor Co.

Deramus, Fitts, Johnston & Mullins, Birmingham, for appellee Universal C. I. T. Credit Corp.

**STAKELY, Justice.**

In this case a bill in equity was filed by James Lacey (appellant) against Edmunds Motor Company, Inc., a corporation, and Universal C. I. T. Credit Corporation, a corporation (appellees). The bill was amended several times and demurrers were sustained by the court to the bill each time it was amended and to the bill as last amended. Thereupon the court dismissed the bill. The appeal here is from the final decree dismissing the bill.

The appellant, James Lacey, sought by his bill of complaint to rescind a contract of sale of an automobile on the ground that the contract was induced by fraud of the appellee, Edmunds Motor Company, Inc., and the contents of the contract were misrepresented to the complainant. According to the allegations of the bill, a salesman of Edmunds Motor Company agreed on the sale of the 1955 Ford owned by the complainant, it being specifically agreed, "that the indebtedness against said 1955 Ford car would be transferred to said 1956 Ford car and that there would be added to said indebtedness the sum of $400.00 making a total of $1926.00, the complainant in addition to pay $100.00 cash directly to respondent Edmunds Motor Company." The complainant then asked the salesman to telephone Associates Discount at its Birmingham office and get the manager on the telephone and introduce the complainant to the person answering the call. The complainant stated who he was and wanted to know what it would cost to finance an automobile in the amount of $1,923, explaining that he was buying a car from Edmunds Motor Company, Inc., a 1956 Ford Victoria Sedan. He was told by the party on the other end of the line that they could finance it on the basis of $83.37 per month, the payments to be for 30 months. The salesman for Edmunds Motor Company then filled out a printed form bearing the name of "Edmunds Mtr. Co.—Retail buyer's order" showing the details of the entire price that the complainant would be obligated to pay Associates Discount, Inc.

It was further alleged that the salesman handed to complainant a blank form and told complainant to sign his name at the bottom of same saying that said salesman would then give this to one of the stenographers of Edmunds Motor Company to insert by typewriter the proper figures showing amount payable by complainant, that the stenographers were busy on other matters at that time and that he would see that there was correctly transcribed on said form what was agreed on. It is then

alleged that the complainant refused to sign his name on said form until the correct figures were written on said form. There was some discussion about filling out the form and then the manager of Edmunds Motor Company stated: "Whatever is on the paper—we will stand behind that." Thereupon the manager told said salesman and agent to write such a statement and give it to complainant. Complainant then signed his name on the blank financial form where he was told to sign it and took possession of said 1956 Ford automobile and drove it off.

It is further alleged that before the complainant took possession of the 1956 Ford he paid Edmunds Motor Company, Inc. the sum of $100 and was given a receipt for it.

It is further alleged that without the knowledge or consent of the complainant, the agent or agents of Edmunds Motor Company within the line and scope of their employment, fraudulently "inserted or caused to be inserted in and on said paper, that complainant had signed in blank at the request and direction of said agent and salesman of respondent Edmunds Motor Company, figures and information to the effect that the payments to the finance company would be $111.21 per month for a period of 30 months and that the total amount payable to the finance company would be $3,336.30 and then in complete disregard of the instructions of the complainant gave, while acting within the line and scope of their employment, said paper to the Universal C. I. T. Corporation."

It is further alleged that the acts and doings of said agents or agent of respondent Edmunds Motor Company were false and fraudulent and known by them to be so, the written showing or statement given by the said agent showing on its face that the payments of complainant were to be $83.37 per month for a period of 30 months or a total of $2,501.10, instead of $3,336.30.

It is further alleged that about two weeks thereafter complainant received through the United States mail a notice in writing from the Universal C. I. T. Corporation advising him that said company had financed complainant's 1956 Ford car. In this notice it was shown that the number of installments were 30 and the amount of each installment was $111.21. The total amount due to Universal C. I. T. Corporation was shown to be a total of $3,336.30.

It is further alleged that upon receipt of said notice to complainant from Universal C. I. T. Corporation complainant went to the manager of Edmunds Motor Company in Birmingham and told him that he wanted the matter straightened out so that the finance contract would speak the truth and that the complainant's instructions about the placing of the finance contract with Associates Discount had been disregarded by Edmunds Motor Company. Edmunds Motor Company refused to do anything about it and complainant then went to the office of Universal C. I. T. Corporation at Birmingham and made the same complaint there and contended that he only owed on his car $83.37 per month. Universal C. I. T. Corporation refused to give complainant any help except to tell him that they would sell the 1956 Ford car and apply the proceeds to the amount of their contract price.

It is further alleged that "Thereafter and before the filing of this suit complainant tendered to the respondent and each of them the said 1956 Ford automobile and demanded that the money that complainant had paid respondent Edmunds Motor Company namely $100 be returned to him and that he be given back all the papers that he, the complainant had signed and given to Edmunds Motor Company and also that he be given the said 1955 Ford automobile that he had traded to Edmunds Motor Company heretofore alleged."

We will not set out in detail the several amendments to the bill, it being sufficient to say that in the first amendment the complainant alleged that through a course of dealing that he was spelling out in detail in the amendment Edmunds Motor Com-

pany was acting as an agent for Universal C. I. T. Corporation in the transactions that it had with Lacey, complainant.

In the second amendment to the bill complainant alleged that "the said actions and doings of salesman or agent of said Edmunds Motor Company were done without his knowledge; that the same were done without his consent and by someone or more persons not authorized by Complainant so to do and that Complainant had never consented to or ratified the said alleged acts and doings of said agents or agent of Edmunds Motor Company."

The last amendment to the bill alleged, "in the alternative," that "the contract now existing between the complainant and the respondent is usurious * * *."

■ The appellees demurred to the bill as a whole and then, specially to several alleged aspects of the bill. The court ruled generally on the demurrers, sustaining them without setting out which grounds were apt. The effect of such a ruling was a ruling on the demurrer to the bill as a whole, for where a bill sets up several distinct equities, a decree sustaining a demurrer generally and making no reference to grounds of demurrer going to a part or aspect of the bill will be referred to the grounds of demurrer addressed to the bill as a whole. On appeal here only the grounds going to the sufficiency of the bill as a whole will be considered. City of Talladega v. Ellison, 262 Ala. 449, 79 So.2d 551, and cases cited therein.

■ It is a well-established principle in Alabama that a buyer alleging that he was induced by fraud to enter into a contract may rescind by restoring benefits and recover payments, or affirm, retain benefits, and sue in deceit for damages (Southern Building & Loan Ass'n v. Argo, 224 Ala. 611, 141 So. 545; Day v. Broyles, 222 Ala. 508, 133 So. 269) or he, the defrauded party, when sued by the party who perpetrated the fraud, may by appropriate plea set up such fraud as a defense to de-

feat the action (Southern Building & Loan Ass'n v. Bryant, 225 Ala. 527, 144 So. 367). However, the buyer must elect between his remedies and may not combine them. Glass v. Cook, 257 Ala. 141, 57 So.2d 505; Tollett v. Montgomery Real Estate & Ins. Co., 238 Ala. 617, 193 So. 127. It is also true that a court of equity has concurrent jurisdiction with a court of law to annul or rescind a contract induced by fraud. King v. Livingston Mfg. Co., 192 Ala. 269, 68 So. 897.

■ In this case appellant, James Lacey, chose to file his bill in equity to rescind the contract alleged to have been induced by fraud. Our decisions require that allegations of fraud in a pleading, to be sufficient, must positively set forth the facts constituting the fraud so that the court can clearly see that fraud has intervened. Terrell v. Marion County, 250 Ala. 235, 34 So. 2d 160; Hyman v. Langston, 210 Ala. 509, 98 So. 564.

We have carefully set out the material facts alleged in the bill. We believe those facts alleged fraud with sufficient certainty, with the exception to which we shall hereinafter refer. In substance, it is alleged that complainant and Edmunds Motor Company entered into the sale of a 1956 Ford automobile, that the terms of the sale were agreed on and further payments were to be made by complainant to Edmunds Motor Company at the rate of $83.37 per month for a period of thirty months. It is further alleged, however, that without the knowledge and consent of the complainant, Edmunds Motor Company falsely and fraudulently inserted in the contract the amount of the monthly payments to be $111.21 for a period of thirty months making a total of $3,336.30, instead of $83.37 per month for thirty months making a total of $2,501.10. It is further alleged that this contract was turned over by Edmunds Motor Company to Universal C. I. T. Credit Corporation.

Many of the grounds of demurrer take the position that the bill fails to allege

sufficiently tender by the complainant of the property received by him under the contract. Both appellees, Edmunds Motor Company and Universal C. I. T. Credit Corporation, insist in brief that in an action to rescind a contract induced by fraud of the seller, the purchaser must return the subject of the sale or offer to return it and if refused by the seller the purchaser must either leave such property on the premises of the seller or if he retains possession, must hold it as a bailee and may not use it for his own purposes. Appellees further insist that a failure to allege such tender in the bill of complaint renders the bill demurrable.

■ The bill does allege that before the filing of the suit, the complainant made tender of the 1956 Ford automobile and demanded the return of the money which he had paid out and the return of the 1955 Ford automobile which he had traded in. It is true that the complainant did not leave the automobile on the premises of the seller or hold it as a bailee. In this connection, we should keep clearly in mind that the instant case is in a court of equity and not in a court of law. There is a substantial difference between rescission in a court of equity and rescission in a court of law. In a court of law the action proceeds on the theory that a rescission had previously been made but in equity the suit seeks a decree of the court rescinding the contract and advising the parties as to what their further acts must be.

"The whole doctrine involved in reference to the rescissions of contracts for fraud and duress is based largely on the provisions governing rescission as an equitable remedy. The substantial difference is that a court of equity decrees rescission or cancellation upon certain terms which require the party seeking relief to do equity, and which it can do, whether the party has restored or offered to restore the consideration or not, and

which has been held not to be a condition precedent for relief; whereas, in a court of law the court only has the power to enforce or annul the contract and cannot compel a restoration of the consideration as a condition to relief, and a complaining party must therefore voluntarily put the other party in statu quo as a condition precedent to relief."

Royal v. Goss, 154 Ala. 117, 122, 45 So. 231, 232.

In the case of Garner, Neville & Co. v. Leverett, 32 Ala. 410, 413, it is stated:

"In a court of law, a restoration of the property, or an offer to restore it, would be necessary, before the contract could be treated as annulled. But a court of chancery, unlike a court of law, may require as a condition precedent to the rescission an abandonment of the land, and the payment for the use and occupation by the purchaser; and therefore does not adopt the same principle which prevails at law. * * *"

■ It is, therefore, not essential to the maintenance of a bill in equity for the rescission of a contract on the ground of fraud, that there be an allegation of a restoration or offer of restoration by the purchaser of what he has received under the contract. Garner, Neville & Co. v. Leverett, supra; Martin v. Martin, 35 Ala. 560; Miller v. Louisville & Nashville Railroad Company, 83 Ala. 274, 4 So. 842; Perry v. Boyd, 126 Ala. 162, 28 So. 711. Of course, the trial court will not grant the relief prayed for, without requiring the complainant to do equity.

■ Several of the grounds of demurrer are to the effect that the bill failed to allege that complainant, Lacey, had actually sustained any injury as a result of the alleged fraud; that only prospective damages were alleged.

Under our decisions, it is not necessary that actual present damage result to the complainant because of fraud practiced upon him, but if injury is to accrue in the future that is sufficient. Kelly v. McGrath, 70 Ala. 75: Van Antwerp v. Van Antwerp, 242 Ala. 92, 5 So.2d 73; Gray v. Gray, 246 Ala. 627, 22 So.2d 21; Smith v. Smith, 266 Ala. 118, 94 So.2d 863.

The allegations of the bill clearly indicate that had the alleged fraud not been practiced the total amount owed by the complainant under the contract sought to be rescinded by this action would have been $2,501.10 instead of $3,336.30. If complainant is to be bound by said contract he will obviously suffer damages.

■ There is one feature of the bill, however, which requires further discussion. In American Life Ins. Co. v. Powell, 260 Ala. 574, 71 So.2d 872, 873, it is said:

"  *   *   * 'Patently a demurrer is due to be sustained *if any one* of its *grounds or causes* [is] well taken against the unit of pleading to which the demurrer is addressed.' *   *   *

*   *   *   *   *   *

"When a demurrer assigning various grounds is sustained without specifying the cause leading to that result, the decree will be referred to such grounds as will support it. *   *   *."

See also Ellis v. Stickney, 253 Ala. 86, 42 So.2d 779.

In the case at bar the bill was demurred to on the ground that, "For aught that appears complainant relied upon his own knowledge and not upon any representation made by the respondent in consumating the transaction complained of." It appears that no effort was made to amend the bill so as to include within the bill allegations showing that the complainant relied on the representations made to him. In this respect we think the bill is fatally defective.

In Tillis & O'Neal v. Austin, 117 Ala. 262, 22 So. 975, Judge Brickell, writing for the court, said:

"  *   *   * When the execution of an instrument, which the party signing did not intend to sign, and did not know he was signing, is procured by a misrepresentation of its contents, and the party signing it does so without reading it or having it read, relying upon such misrepresentations and fraud, and believing he is signing a different instrument, he can avoid the effect of his signature notwithstanding he was able to read and had an opportunity to read the instrument. *   *."

See also Prestwood v. Carlton, 162 Ala. 327, 50 So. 254; Regional Agricultural Credit Corporation of Washington, D. C. v. Hendley, 251 Ala. 261, 37 So.2d 97.

In the absence of allegations showing that the complainant relied on the representations made to him, we do not think that he states a good cause of action for relief.

We conclude that the lower court acted correctly in sustaining the demurrer to the bill as amended and acted correctly when it dismissed the bill as amended when the complainant failed to plead further.

Affirmed.

LAWSON, MERRILL and GOODWYN, JJ., concur.