This appeal involves a suit for rescission by the lessors (the Willcutts) of an oil and gas lease; the suit also seeks punitive damages and an accounting. The Willcutts contend that representatives of the lessee, Union Oil Company of California (Union), induced them to enter into the lease by fraud, misrepresentation, or failure to disclose material facts; these contentions are referred to herein as the fraud claims. The trial court granted partial summary judgment on the fraud claims — the prayer for an accounting remains pending — and directed entry of judgment under Rule 54 (b), A.R.Civ.P.
The Willcutts filed this suit on November 14, 1979. They claim that they first learned of the alleged fraud in March 1979, after this court ruled in Trauner v. Lowrey,369 So.2d 531 (Ala. 1979), that the Trauners owned the mineral rights to their property. The Trauners were neighbors of the Willcutts and claimed under the same chain of title (the Hackmeyer chain). *Page 1219 
On or about June 4, 1975, representatives of Union offered to lease from the Willcutts their mineral interest in their two-acre home lot in Mobile County. The Willcutts alleged in their complaint that
 "Union represented to Plaintiffs that Plaintiffs had no mineral interest under the lands described and that Union wished to get a `Security Lease' from Plaintiffs and that the purpose of Plaintiffs signing this `Security Lease' to Union was that Union needed a release from any future claims by Plaintiffs for noise or bother of the drilling, or interference or spoliation of water and the like. Union did not disclose that Union knew or suspected that Plaintiffs had or might have a mineral interest in said lands."
The complaint sought to have the lease rescinded or to have an accounting rendered and damages paid to the Willcutts. It further sought punitive damages for "the willful and gross fraud of Defendant in fraudulently inducing Plaintiffs to execute" the lease.
Union filed a motion to dismiss on the grounds, inter alia, that the action was barred by the applicable statute of limitations. The Willcutts filed an amended complaint averring that they did not discover that they were possessed of a mineral interest in their lands, nor did they discover the fraudulent nature of Union's representations to them, until March of 1979.
The complaint included a count alleging that, by attempting to defeat the title of claimants under the Hackmeyer chain inTrauner, Union forfeited any right or claim it had under its lease from the Willcutts. The trial court granted partial summary judgment for Union under this count on December 5, 1980; the Willcutts have not appealed from this portion of the judgment.
After discovery and other proceedings, Union filed a motion for summary judgment on the fraud claims. The court granted this motion on March 26, 1982, holding that
 "There is no genuine issue as to any material fact raised by the claims for relief in the plaintiffs' complaint for misrepresentation or failure to disclose material facts [and] Union is entitled to judgment, as a matter of law, dismissing all claims by the plaintiffs for misrepresentations or failures to disclose material facts."
The Willcutts raise the following issues:
 "I. To the extent the date on which the plaintiffs discovered the fraudulent conduct complained of in the complaint is a material fact for limitations purposes, the record discloses a genuine issue of fact as to such date, creating a jury issue and making summary judgment improper as a matter of law.
 "II. A claim for rescission of an oil and gas lease on the ground of fraud in the inducement as is alleged in the complaint before this court is a claim governed by the ten year limitation period of Ala. Code § 6-2-33 (1975) rather than by any lesser limitation period.
 "III. An ancillary claim for punitive damages asserted in conjunction with a claim for rescission of an oil and gas lease on the ground of fraud in the inducement as is alleged in the complaint before this court is a claim governed by the ten year limitation period of Ala. Code § 6-2-33 (1975) rather than by any lesser limitation period."
The alleged fraud would have taken place on or before June 4, 1975, when the Willcutts signed the lease. An action for fraud must be commenced within one year of accrual of the cause of action. Code 1975, § 6-2-39 (a)(5); Board of School Comm'rs v.Reynolds, 294 Ala. 21, 310 So.2d 876 (1975). A claim for fraud, however, "must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his action." Code 1975, § 6-2-3. The courts of this state have uniformly held that "Fraud is deemed to have been discovered when it ought to have been discovered," and that "Facts which provoke inquiry in the mind of a man of reasonable prudence, and which, if followed up, would have led to a discovery of the fraud, constitute *Page 1220 
sufficient evidence of discovery." Johnson v. Shenandoah LifeInsurance Company, 291 Ala. 389, 397, 281 So.2d 636 (1973);Butler v. Guaranty Savings Loan Ass'n, 251 Ala. 449,37 So.2d 638 (1948).
The trial court, in deciding Union's summary judgment motion, had before it the Willcutts' answers to interrogatories, an affidavit by Mr. Willcutt, and certain exhibits. One of these exhibits was the Willcutt-Union lease, which clearly states that the lessors
 "do hereby grant, lease and let unto said Lessee . . . all of their right, title and interest in and to all the lands and minerals owned or claimed in the SW1/4 of Section 13, Township 1 South, Range 2 West, Mobile County, Alabama, whether such lands and/or minerals be correctly described and/or otherwise included herein or not."
Among the other evidence the trial court had before it were statements by Mr. Willcutt that a man named Blocker came to his house in 1976 offering to buy his mineral interest, and there was a letter sent in November 1976 by Union to the Willcutts and other property owners in the vicinity addressed to "Claimants of Royalty Interest in Referenced Property." This letter summarized the facts giving rise to the title dispute (see Trauner, supra), and concluded,
 "The above information is furnished to you for whatever action you may wish to take in resolving the ownership of royalties under the properties. Union will continue to hold the monies accrued to this interest and reserves the right to make payments into a court of competent jurisdiction, should any of the parties elect to file a court action to determine the ownership."
The Willcutts argue that none of these facts operated to cut off the tolling of the statute of limitations because the representatives of Union who visited them in 1975 convinced them they were not mineral interest holders. We find the most telling fact to be that Mr. Willcutt, in answering interrogatories, stated that he was aware of the Trauner litigation in 1976 from discussions with attorneys and his neighbors. The Willcutts' mineral rights derived from the same source as the Trauners'.
The record thus indicates not only that the facts were sufficient to provoke inquiry and lead to discovery of the alleged fraud, but also that Mr. Willcutt did in fact make inquiries. To allow him to wait until the Trauners prosecuted their suit to a successful conclusion and then claim that he was not aware of the situation would be to subvert the purpose of § 6-2-3, which is to protect innocent victims of concealed and undiscovered fraud. There is no merit in the Willcutts' first issue.
The second and third issues stem from the Willcutts' prayer to have the lease rescinded.
It is a well established principle that
 "`When the execution of an instrument, which the party signing did not intend to sign, and did not know he was signing, is procured by a misrepresentation of its contents, and the party signing it does so without reading it or having it read, relying upon such misrepresentations and fraud, and believing he is signing a different instrument, he can avoid the effect of his signature notwithstanding he was able to read and had an opportunity to read the instrument.'"
Lacey v. Edmunds Motor Company, 269 Ala. 398, 404,113 So.2d 507 (1959), quoting Tillis O'Neal v. Austin, 117 Ala. 262,22 So. 975 (1897). See also, Louisville N.R. Co. v. Steel,257 Ala. 474, 59 So.2d 664 (1952); Booth v. Parrish, 254 Ala. 304,48 So.2d 212 (1950); Regional Agricultural Credit Corp. v.Hendley, 251 Ala. 261, 37 So.2d 97 (1948); Standard Oil Co. v.Myers, 232 Ala. 662, 169 So. 312 (1936); Brenard Mfg. Co. v.Cannon, 209 Ala. 626, 96 So. 760 (1923); Illinois Cent. R. Co.v. Johnston, 205 Ala. 1, 87 So. 866 (1920); Adams Hardware Co.v. Wimbish, 201 Ala. 548, 78 So. 902 (1918); Gillespie v.Hester, 160 Ala. 444, 49 So. 580 (1909); Leonard v. Roebuck,152 Ala. 312, 44 So. 390 (1907). *Page 1221 
The Willcutts have sufficiently stated a cause of action for rescission and supported it in Mr. Willcutt's affidavit and answers to interrogatories to withstand Union's motion for summary judgment. They have raised a fact question as to whether, as alleged in their complaint, the Union representatives told them they had no mineral rights and that the lease was only a "Security Lease" releasing Union from liability for consequential damages from drilling activities in the area. The ten-year statute of limitations of Code 1975, § 6-2-33, governing actions for the recovery of lands, tenements, or hereditaments, applies to a suit in equity for rescission of a lease for fraud. Glass v.Cook, 257 Ala. 141, 57 So.2d 505 (1952). A mineral interest in land is a corporeal hereditament which may be recovered in an action governed by § 6-2-33. Williams v. Kitchens, 261 Ala. 340,74 So.2d 457 (1954). The trial court, therefore, erred in granting summary judgment on the claim for rescission.
In their third issue, the Willcutts argue that their claim for punitive damages for fraud should have been allowed as ancillary to the suit for rescission on the grounds of fraud and therefore also governed by the ten-year statute of limitations of § 6-2-33, supra. They rely on Mid-State Homes,Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975). This Court held in Mid-State Homes that under appropriate circumstances a party who rescinds a contract induced by fraud may also recover punitive damages.
In Mid-State Homes, however, the Court was not faced with a question of statutes of limitations. If we were to accept the Willcutts' argument, they could recover punitive damages as in a fraud action long after the statute of limitations had run on a fraud action as such. Section 6-2-33 gives ten years to bring an action for the recovery of lands; §§ 6-2-3 and 6-2-39 give only one year from the date of the fraud or the discovery thereof to bring an action for fraud. This distinction comports with the purpose of limitations statutes in that evidence as to possession of or title to land tends to be long-lasting and verifiable while evidence of fraud tends to be evanescent and disputable.
The happenstance that fraud is one of the grounds for rescission coincides in this situation with the law that a suit for rescission of a lease of mineral rights is governed by the ten-year statute of limitations, as explained above. This coincidence provides no legal ground for reviving the Willcutts' time-barred fraud claim for punitive damages.
Of course, rescission being an equitable remedy, laches may apply if the Willcutts unduly delayed in bringing suit. "The rule is that upon the discovery of the fraud, the party must act with promptness. An express affirmance of the contract by word or act after the discovery of the fraud defeats the right of rescission." Nelson Realty Co. v. Darling Shop ofBirmingham, 267 Ala. 301, 308, 101 So.2d 78 (1957) (emphasis in the original). See also, Multer v. Multer, 280 Ala. 458,195 So.2d 105 (1966); McCary v. Robinson, 272 Ala. 123,130 So.2d 25 (1961). We point out that our holding on the first issue was not that the Willcutts had discovered the alleged fraud more than one year prior to bringing suit, but only that the facts were such that, with reasonable inquiry, they should have
discovered the alleged fraud. This is an entirely different question from that posed in equity; we can hold as a matter of law that they should have discovered the fraud within the meaning of § 6-2-3, but the equitable question of whether they affirmed the contract after discovery involves a factual dispute and is unlikely to be appropriate for summary judgment. Moreover, the record contains no indication that this question has yet been presented to or decided by the trial court.
For the reasons stated, the judgment of the trial court is due to be affirmed as to the claim for punitive damages and reversed as to the claim for rescission, and the cause remanded for further proceedings consistent with this opinion. *Page 1222 
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.