# Ala. Great Southern Railroad Co. v. Heddleston.

*Action for Damages, by Passenger against Railroad Company.*

1. *Liabili'y of railroad company for mistakes of agent, directing passenger to wrong train.*--An action for damages lies against a railroad company as a common carrier, in favor of a passenger, who, having purchased a ticket at the office, gets on the wrong train by the direction of the agent in charge, and is compelled to leave the train short of his destination, because the train was forbidden to stop at that station ; and he is entitled to recover the actual damages sustained or caused by rea-

son of the mistake, although no violence was used to put him off the train.

2. *Variance; proving part only of wrongs complained of.*—Where the complaint alleges two or more torts in a single count, claiming damages on account of both, and the evidence establishes only one of them, there is no fatal variance between the allegations and the proof, but the plaintiff may recover for the wrong proved; as where plaintiff alleges, in a single count, that he purchased a ticket from the agent of the defendant railroad company, got on the wrong train by the mistaken direction of the defendant's agent, and was forcibly ejected from the cars by the conductor before reaching his destination, while the proof shows that he left the train voluntarily, without any violence or rudeness on the part of the conductor, who had told him that the train was forbidden to stop at his destination,—a recovery may be had for the actual damages sustained or caused by the mistake of the agent in pointing out the wrong train, although no wrongful conduct on the part of the conductor is shown.

APPEAL from the Circuit Court of Greene.

Tried before the Hon. S. H. SPROTT.

This action was brought by J. L. Heddleston, against the appellant, as a common carrier, owning and operating a railroad which ran between Epes' Station, in Sumter county, and Stewart's Station in Hale county; and was commenced on the 1st September, 1885. The complaint contained only one count, and claimed $3,000 as damages, on the following allegations: "On the 9th April, 1885, plaintiff applied at Epes' Station for transportation by defendant to Stewart's Station, and purchased of said defendant's ticket-agent a ticket to said latter station, paying the regular fare therefor. A few minutes thereafter, the north-bound passenger train came along, and said ticket-agent told plaintiff that was his train; and plaintiff thereupon got aboard of said train to go to Stewart's Station. After said train had left the station, and had gone several miles, the conductor in charge of said train, who was defendant's agent, and whose duty it was to collect the tickets and fares from passengers, passed through said train, which was still in motion, and called on plaintiff for his ticket, or fare, and plaintiff thereupon tendered to him his said ticket; but said conductor refused to take said ticket, saying that he would put plaintiff off at Akron, which was three miles before reaching Stewart's Station, plaintiff's destination as aforesaid. When said train reached Akron, said conductor, with a grossly careless disregard of plaintiff's safety and welfare, again told plaintiff, in an angry and insulting manner, to get off said train, or he would use force and put him off; and plaintiff, fearing bodily harm, got off said train at Akron, under protest, in a boisterous crowd of drunken men and lewd women, at about twelve o'clock at night, during inclement weather. Plaintiff was

unable to procure accommodations that night at Akron, and was forced to walk to Stewart's Station, a distance of three miles, over a creek and high trestle, the night being dark, and the weather tempestuous ; and was made sick, and incapacitated from attending to his professional duties as a physician, for two days ; and was otherwise greatly damaged and injured in his feelings, body, mind and health, by reason of said wrongful ejection from said train. Wherefore he brings this action."

The defendant pleaded not guilty, and a special plea which averred, in substance, that no insulting language or force was used or threatened to induce plaintiff to leave the train; that the conductor promptly informed him, on seeing his ticket, that the train could not stop at Stewart's Station, being forbidden by the orders of the company, and offered to carry him either to Eutaw or Akron, allowing him to retain his ticket, so that he might reach his destination by the next train ; that plaintiff elected to go on to Akron, when, as he knew, he might have had good accommodations at Eutaw. Issue was joined on both of these pleas, and the trial resulted in a verdict and judgment for plaintiff, for $200. On the trial, as appears from the bill of exceptions, it was not denied that the plaintiff got on the train by the direction, through mistake, of the ticket-agent at Epes' Station ; nor was it denied that the conductor of the train had positive instructions not to stop at Stewart's Station, the only matter of contest, as to which there was any conflict in the evidence, relating to what passed between the plaintiff and the conductor, and the circumstances under which the plaintiff left the train. " The evidence tended to show that, when the conductor came around to collect the fare, plaintiff handed him his ticket; but the conductor refused to take it, and said that he was not allowed to stop at Stewart's—that his orders were positive—but that plaintiff could stop at Boligee, or Eutaw, or Akron, but he did not offer to carry plaintiff back to Epes' Station. . . The evidence for the defendant tended to show that the conductor told plaintiff he could get good accommodations at Eutaw, a good night's rest, and breakfast in the morning, and get to Stewart's on the same ticket, which he allowed plaintiff to retain without punching it, and which plaintiff produced on the trial ; that plaintiff insisted on his rights, saying that he had bought his ticket, and had been told by the agent to get on this train. . . There was evidence on the part of the plaintiff that the conductor's manner was rough, and that he threatened, in a rude and insulting manner, to have plaintiff put off unless he got off; but there was evi-

dence for the defendant that the conductor was neither rude, nor insulting, nor threatening in his manner—that he told plaintiff, calmly and politely, that he must get off, as his orders were positive; but he did not take hold of him, nor offer to do so. As the train approached Akron, the evidence tended to show that plaintiff asked the conductor, if he intended to carry out his threat of putting him off at Akron, and the conductor said he did. Plaintiff then said, he had had time to reflect, and did not care to have a personal difficulty, and that he would get off the train, but under protest. The conductor replied, 'Very well;' and plaintiff then got off the train."

The defendant requested the following charges, in writing: (1.) "If the jury believe all the witnesses to be equally unimpeached and credible, the plaintiff is not entitled to a verdict." (2.) "If the jury believe all the witnesses equally unimpeached and credible, the plaintiff is not entitled to recover any exemplary or vindictive damages." (3) "If all the evidence is believed, the plaintiff is not entitled to a verdict, but the jury should find for the defendant." The court refused each of these charges, and the defendant excepted to their refusal.

The defendant asked, also, a written charge in these words: "(5.) If the plaintiff bought the ticket produced on the trial, at Epes' Station, in April, 1885, and offered it to the conductor on the train that night; and if the conductor then and there informed him that, under the existing rules of the company, the train did not stop at Stewart's, and was not allowed to stop there unless specially ordered by the superintendent; and if such were the rules of the company then of force; and if plaintiff, by consent of the conductor, was allowed to keep his ticket without cancellation, and did keep it, and still keeps it; and if he voluntarily left the train at Akron, and never was ejected from the train; then, on this state of facts, the jury should find for the defendant." The court gave this charge as asked, but immediately added: "This charge is applicable to vindictive and exemplary damages, but not to the actual damages, if the ticket-agent sold plaintiff the ticket, and misdirected him as to the train, and plaintiff sustained actual damage from such misdirection." To this additional or explanatory charge the defendant duly accepted.

The refusal of the several charges asked, and the explanatory or qualifying charge given, are assigned as error.

THOS. R. ROULHAC, and S. F. RICE, for appellant.

Troy, Tompkins & London, *contra.*

STONE, C. J.—Plaintiff, Heddleston, purchased from defendant's ticket-agent, at Epes' Station, a ticket from that place to Stewart's Station on the same road. A train approaching, going in the direction of Stewart's Station, the ticket-agent informed plaintiff that was his train, and he got aboard. He did not discover he was on a train which did not stop at Stewart's, until it was under headway, and the mistake could not be entirely remedied. The testimony up to this point is without conflict. Conceding that no injury, insult or even discourtesy, was offered to plaintiff, the mistake of the ticket-agent gave him a right to sue the defendant, and recover the actual damages he had sustained from such mistake.—*S. & N. Ala. R. R. Co. v. Huffman*, 76 Ala. 492, which collects the authorities.

Charges 1 and 3, asked by defendant, were rightly refused on the principles stated above. For the same reason, the explanatory charge given, after giving charge 5 asked by defendant, was free from error. Charge 2 asked by defendant was misleading, and properly refused.—*Dorgan v. State*, 72 Ala. 173.

It is contended for appellant, that the present suit must fail, because there was a variance between the allegations and proof; that the complaint is for a wrongful and forcible ejection from the train, while the proof failed to establish this charge, and only showed the ticket-agent's misdirection, as to the proper train he should go on. A full answer to this is, that the complaint sets forth and counts on both causes of action. When such is the case, it does not prevent all recovery. The plaintiff succeeds to the extent the proof sustains his allegations, and only fails to the extent his proof fails. Suing for two torts, and proving only one, affects only the extent of the recovery. If it be thought the damages assessed were disproportionate to the injury, this is a question which could have been raised in the court below on a motion for a new trial, but, under our system, can not be raised in this court.

Affirmed.