# Huntsville Knitting Mill Co. *v.* Butner.

## *Injury to Servant.*

(Decided October 21, 1915.   Rehearing denied November 18, 1915.
69 South. 960.)

1. *Master and Servant; Injury to Servant; Question of Fact.*— Whether or not operating the wringer was part of the work of "turning ribs," for which work the injured employee was hired, was a question of fact for the jury, the evidence thereon being conflicting.

2. *Same.*—Under the evidence in this case it is a question for the jury whether the father of the injured minor employee gave specific instructions when hiring his boy that he should not be worked at the wringer, the instrumentality injuring him.

3. *Same.*—In such a case, where plaintiff had voluntarily introduced evidence that running a wringer was more dangerous than turning ribs, it was the right of defendant to introduce evidence in rebuttal.

4. *Same; Evidence.*—Where the employee was injured at the wringer it was not competent for the superintendent of defendant to

testify that he would not have employed the boy had he understood that he was not to work at the wringer, since such evidence was as to an undisclosed intention.

5. *Trial; Reception of Evidence; Objection.*—Unless the question is sufficiently definite to show that the answer would be prima facie relevant, the court will not be put in error for sustaining an objection to a question, if it does not appear that the court was informed as to what testimony was expected to be elicited, and that it was material to the issue.

6. *Same.*—It is error for the court to sustain objection to the question which, on its face, calls for an answer clearly relevant and competent.

7. *Appeal and Error; Harmless Error; Pleading.*—Where the action was by the father for damages for injury to his son, and two pleas set up plaintiff's negligence, and two other pleas set up the negligence of the son, it was harmless error to sustain demurrers to the first pleas as no facts were alleged in any of them which were available as a defense that were not available under the general issue.

8. *Master and Servant; Injury; Pleading.*—Where the complaint charged that defendant caused the minor employee to engage in work which was highly dangerous without the knowledge, consent or permission of the father, in consequence of which the minor was injured, a plea of contributory negligence was not apt as a defense, as the complaint was not based upon negligence.

9. *Same; Instruction.*—A charge based upon the hypothesis that plaintiff did not consent to the employment of his son, was error, although stating a correct proposition of law, because of the fact that issue was joined on the pleas setting up contributory negligence on the part of the minor employee.

APPEAL from Madison Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by Newt. Butner against the Huntsville Knitting Mills Company for damages for injury sustained by his minor son while in the employment of defendant. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

COOPER & COOPER, for appellant.

R. E. SMITH, and S. S. PLEASANTS, for appellee.

MAYFIELD, J.—Appellee sued appellant to recover damages for personal injuries to plaintiff's minor son. The gravamen of the cause of action was that defend-

ant employed plaintiff's son in a dangerous business, without the consent of plaintiff. The allegation as to this gravamen is stated in the first. count, as follows: "The defendant, its operatives, agents or employees caused one Mason Butner, plaintiff's son, a boy of the age of 15 years and inexperienced, to engage in work for the defendant which was highly dangerous to a person of his youth and inexperience, without the consent, knowledge, or permission of the plaintiff, in consequene whereof the said Mason Butner, while so engaged, was caught in a piece of defendant's machinery known as a wringer, whereby his left arm was twisted and torn from his body, and otherwise bruising, maiming and injuring the said Mason Butner so that he was permanently injured."

The allegation in the other counts on which the trial was had was practically and in effect the same as that of the first. In the second count, the allegation was more specific, but it was voluntarily stricken from the complaint by the plaintiff. This allegation was that: "Plaintiff's son, of the age of about 15 years, was working in the employment of said defendant in and about the operation of its mill. That the said Mason Butner was engaged by the defendant, its operatives, servants, agents, or employees, to turn ribs, to wash them and carry them to the dryroom; that these were the duties which the said Mason Butner was engaged to perform by the said defendant, its servants, agents, or employees by and with the consent of the plaintiff, his father, but that, on or about said June 16, 1914, the said Mason Butner was induced by the defendant, its agents, servants, or employees to leave off said work and to commence and carry on the operation of the wringer, which is a machine operated by the defendant into which wet

cloths or cotton goods are placed, and the machine so operated as to throw or drive the water out of said cloth or cotton goods. That while so engaged in the operation of the wringer, the said Mason Butner was caught in said wringer, and his left arm was twisted around the shaft that drives the wringer, and was torn and pulled and wrung from his body, and that he was otherwise bruised, maimed, hurt, and injured, causing him intense suffering, and resulting in his permanent injury."

The undisputed facts, as disclosed by the evidence, were that the plaintiff's son was employed in the defendant's business—the cotton or knitting mill business —and was so employed with the knowledge and consent of the father. The evidence is without dispute that the son was so employed to work in defendant's mill.

The real, the prime contention in the lower court— and it is here renewed—was whether or not the employment authorized the defendant to put the boy at the work of operating a certain machine known as a wringer. The contention of the plaintiff, so far as the evidence shows, is that the employment did not authorize the defendant to put the boy to work at the wringer, while that of the defendant is that it so authorized the defendant. The plaintiff himself testified on this subject as follows: "I remember the occasion of his going to work there. I was employed by the Huntsville Knitting Company myself, and Mr. Estes, the dyeroom boss, asked me if I could get him a hand, a boy to turn ribs. He said he needed some one to turn ribs very bad; they were getting behind. So my son and I came to the mill the next morning, and my son went ahead of me and saw Mr. Estes. I was standing talking to the boys in front of the door where they turn ribs when Mr. Estes

came up and asked me about Mason. I told him, 'Mr. Estes, I will let you have Mason to put to work turning ribs.' I told him, 'Mr. Estes, Mason can turn the ribs for you, but don't put him on the wringer.' Mr. Estes did not make any reply, but nodded his head and walked on. I did not know that my son was at work on the wringer until after the boys came for me and told me his arm was broke. The room where the ribs are turned is not the same room where the wringer is. The rib-room is up stairs and the dyeroom, where the wringer is, is down stairs. The job of turning ribs is not dangerous. Ribs are just a band, something like a hollow pipe, and 10 feet long."

B. M. Estes, defendant's foreman, who employed the boy, testified on the subject in part as follows: "The way that I happened to employ Mason Butner was that Mr. Newt. Butner, his father, came down to the mill and brought the boy. Before this I told him I needed somebody on the rib job. After a few days he brought the boy down there and said, 'Here is a boy to turn ribs for you.' I said, 'All right,' and carried him up and put him on the rib job. I showed him how to turn ribs. That was all there was to it. I did not agree to pay the boy any definite sum of money—only what the job pays. Nothing was said about what I was to pay him. Nothing was said about putting the boy on the wringer. He never told me then nor at any other time. The job of turning ribs means that you have to turn ribs, take them to be washed and while down there in the washroom you have to help wring them."

"I mean to tell the jury that no request or statement was made by Mr. Butner that Mason should not work on the wringer. All the help I employed, as foreman of the dye department, to turn ribs also carried the

goods, as I related, down to the washroom on the eleva-
tor and helped to run the wringer. After Mason But-
ner went to work in the mill, under the contract made
by his father, he worked something like 8 or 10 days
running the job, that is, turning ribs, washed them, and
helped in the washroom, when down there, with the
ribs."

(1, 2) The disputed questions were: First, whether
or not operating the wringer was a part of the work of
"turning ribs," for which latter work the boy was con-
fessedly employed; second, whether or not the father
gave specific directions, when hiring his boy, that he
should not be worked at the wringer. The evidence was
conflicting as to both; and these questions were prop-
erly submitted to the jury.

(3) If the jury should find·that the father gave no
specific directions that the boy should not be worked
at the wringer, then another question of fact would be
presented, whether working at the wringer was more
dangerous than "turning ribs." The plaintiff proved by
John Manning and others—or they were allowed to tes-
tify—that running a wringer was more dangerous than
"turning ribs." The plaintiff having voluntarily intro-
duced such proof, it was competent and proper for de-
fendant to rebut this evidence if it could, or to prove
that it was not dangerous or difficult to operate the
wringer; and it offered evidence of this character and
for this purpose; but the court declined to allow it to
make such proof. In this ruling there was manifest er-
ror. In declining to allow the defendant to introduce
proof of this character the trial court evidently went
upon the theory that the boy was not employed with
the consent of the father to operate the wringer, or
that the father expressly forbade his being worked at

this machine, and therefore that it was immaterial whether it was more dangerous than "turning ribs;" but, as we have shown, the evidence was in conflict as to these questions, and, the plaintiff having introduced proof that it was dangerous and difficult to operate the wringer, and more so than to "turn ribs," the defendant should have been allowed to rebut such evidence.

The particulars of a former difficulty are prima facie not admissible, but where one party has brought out a part of the particulars, the other in rebuttals may bring out all of such particulars.—*Longmire v. State,* 130 Ala. 66, 30 South. 413; 5 Mayf. Dig. 421.

Illegal evidence is admissible to rebut illegal evidence introduced by the opposing party.—*Longmire v. State, supra; Gordon v. State,* 129 Ala. 113, 30 South. 30; *Morgan v. State,* 88 Ala. 224, 6 South. 761; 5 Mayf. Dig. 421

(4) There was no error in declining to allow defendant to prove by its superintendent that he would not have employed the boy, had he understood that the boy was not to work at the wringer. He could not thus testify as to his undisclosed intention or motive in making the contract.

Except in matters of science and skill, and some other special cases resting upon peculiar circumstances, the understanding and opinion of a witness is not to be received as evidence. In cases not falling within the exceptions, he cannot be allowed to testify to the import of a word used in a contract. If he could, a party might be rendered accountable for the misunderstanding of the witness, contrary to the legal obligation of the contract; and the right to construe the words of the contract would be taken away from the court and the jury, and conferred upon he witness.—*Gibson v. Williams,* 4 Wend. (N. Y.) 320; *Robinson v. Drummond,* 24 Ala. 174; *Whetstone v. Bank,* 9 Ala. 875; 7 Mayf. Dig. 321.

A contract which the parties intended to make, but did not make, cannot be set up in the place of the one which they did make, but did not intend to make.—2 Parsons on Contr.; *Sanford v. Howard,* 29 Ala. 684, 68 Am. Dec. 101; 7 Mayf. Dig. 321.

(5) Many of the exceptions go to rulings of the trial court in sustaining objections to questions propounded to witnesses by the defendant. The rule, which seems to be settled by the decisions of this court, is that, when an objection is sustained to a question propounded to a witness, the party asking the question should then make known to the court the testimony he seeks to elicit from the witness in order that the court may determine whether or not the evidence sought is relevant and competent.

It is further settled that on appeal, when error is predicated upon an exception to the action of the trial court in sustaining an objection by the other party to questions propounded to a witness, the trial court will not be put in error, unless it appears that it was made known to the court what testimony it was expected to elicit by the question, and unless it further appears that it was material to the issues in the case.—*Harris v. Badsden,* 162 Ala. 369, 50 South. 321; *Snodgrass v. Caldwell,* 90 Ala. 319, 7 South. 834; 7 Mayf. Dig. 348. The rule is different, however, if the question is sufficiently definite to show that the answer would be prima facie relevant, and it indicates the nature of the answer. It is only when the question is so general that an answer cannot be said to be prima facie admissible that a party is required to inform the court what is proposed to be proven, so that the court may see that the evidence he seeks to elicit is proper.—*Birmingham Co. v. Barrett,* 179 Ala. 288, 290, 60 South. 263; 7 Mayf. Dig. 347.

(6) Where a question on its face calls for an answer which would clearly be both relevant and competent evidence, it should be allowed; and its exclusion must be deemed erroneous, and prima facie prejudicial.— *Birmingham Co. v. Barrett,* 179 Ala. 288, 290, 60 South. 263; 7 Mayf. Dig. 347.

As to many of the questions propounded, they were too general, and we are not able to know what evidence was sought to be elicited thereby, nor to say that the answer would have been admissible.

In some respects this case was tried on an incorrect theory, which was that the cause of action was founded upon negligence, and therefore that contributory negligence would be availing as a defense. The action is not founded on negligence, and of course contributory negligence is not availing as a defense.

(7) The defendant filed four special pleas, each of which set up contributory negligence as a defense. Pleas 2 and 3 set up the negligence of the plaintiff, the father, while 4 and 5 set up the negligence of the boy. The court sustained demurrers to pleas 2 and 3, and overruled them as to 4 and 5. No facts are alleged in any of these pleas which are availing as a defense, except facts which are availing under the general issue; and therefore no injury resulted from sustaining demurrers to any one of the special pleas.

What was said by this court in *Curl's Case,* 153 Ala. 208, 209, 44 South. 975, and the authorities cited, is apt here: "As to the second insistence, said count does not allege any act of negligence, but relies upon the claim that the defendant employed said minor without the consent of the plaintiff. This court has held that one who employs a minor child without the consent of his father, and without such consent places him to work at a dangerous place, or upon a dangerous work, is liable

to the father for any injury suffered by the minor as the result of being placed at such work.—*Williams v. S. & N. Ala. R. Co., supra* [91 Ala. 635, 9 South. 77]; *Marbury Lumber Co. v. Westbrook*, 121 Ala. 179, 25 South. 914; 1 Labatt's Master & Servant, § 21, p. 41; *Gulf, etc., Ry. v. Redeker*, 75 Tex. 310, 12 S. W. 855, 16 Am. St. Rep. 887. In the *Marbury Lumber Case,* * * * the court said: 'The gravamen of the action obviously is the alleged wrong of the defendant in putting the plaintiff's minor son to work at a dangerous work without her [the parent's] consent.'—Page 183 of 121 Ala., page 916 of 25 South."

(8) If the child was employed for, and required to do, dangerous work, without the knowledge or consent of the parent, and was injured in consequence thereof, the action by the parent, based on these acts, does not rest on negligence The wrongful act alleged is a willful act and not a negligent one. We do not mean to say that a count could not be drawn so as to state a cause of action based on negligence, but it is certain that no count in this complaint is so drawn or intended, and that a plea of contributory negligence is not apt. A plea of contributory negligence, under the decisions of this court, is one of confession and avoidance. That is, it in legal effect admits the negligence alleged against the defendant, but also sets up negligence of the plaintiff, which proximately contributed to the injury complained of, or concurred with that of the defendant alleged in the complaint and confessed by the plea.

It is very true that there might be a special plea to an action like the one under consideration, setting up facts to show that the injury complained of was not the proximate result of the wrongful employment of the minor, or placing him to work at a dangerous machine, but was proximately caused by the facts alleged in the plea.

But such a plea would not be one of confession and avoidance.

(9) The court, at the request of plaintiff, charged the jury as follows: "The court instructs the jury, as a matter of law, that if they are reasonably satisfied from the evidence that the plaintiff did not consent to the employment by defendant of his son to run and operate the machine known as a wringer, and that the work of running and operating a wringer was dangerous work for a boy of the age of plaintiff's son, and was more dangerous than the work known as turning ribs, then your verdict should be for the plaintiff, notwithstanding you may further believe from the evidence that plaintiff's son was himself guilty of negligence which proximately contributed to his injury."

"The court instructs the jury as matter of law that contributory negligence of plaintiff's son is no defense to this action if the plaintiff did not consent for defendant to employ his son in operating and running a wringer machine."

These charges stated correct propositions of law, and could have been given without error, but for the fact that issue was joined on pleas 4 and 5, which set up contributory negligence on the part of the injured boy, and there was evidence tending to prove the pleas. What was said in *Westbrook's Case,* 121 Ala. 184, 25 South. 916, is apt here: "The issue was false and foreign to the case. It would have been appropriate had the employment of the boy been with the consent of the mother. In that case she could only recover for defendant's negligence, and to a charge of negligence a plea of contributory negligence would have been a defense. But this erroneous ruling was favorable to and made at the instance of the appellant, and hence cannot be reviewed on this appeal. Plaintiff's remedy against the ruling

was to decline to plead further, suffer a judgment, and appeal to this court. Electing to take issue on the pleas and to proceed with the trial, the case is to be considered here as if she had voluntarily joined in an immaterial issue, thereby making it a material one. And assuming that the pleas were established, the anomaly is presented of a case being made out for the plaintiff without proof of negligence, and being met and overturned by proof of contributory negligence imputable to the plaintiff. But neither the complaint nor the pleas can be said as matter of law, to have been proved. The evidence tended to establish both, but not without conflict or beyond adverse inference."

As this case must be reversed, we call attention to the fact that it is not certain from the allegations of any of the counts on which the trial was had, whether it was the employment of the boy by the defendant for any purpose that is denied to have been with the knowledge or consent of the father, or whether it was merely the employment of the boy at operating the "wringer." If these counts be construed to deny the knowledge and consent of the father to the employment of the boy by the defendant for any purpose, then of course, the plaintiff failed to make out his case, because the undisputed evidence shows that he did consent to the employment, in that he made the contract himself. The real and only conflict is whether or not the father consented to the boy's being employed or used to operate the "wringer."

As the case was evidently tried on false issues, we deem it unnecessary to pass upon other questions, which may not arise on another trial.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.