243 So.2d 685

Louis PIHAKIS and Alabama Equity Corporation of Birmingham, a Corp.

v.

Elizabeth COTTRELL.

8 Div. 384.

Supreme Court of Alabama.

Feb. 4, 1971.

F. Eugene Wirwahn, Birmingham, for appellants.

Brewer & Lentz, Decatur, for appellee.

COLEMAN, Justice.

The defendants appeal from a judgment for plaintiff in an action to recover damages for fraud and deceit.

In outline, the case for plaintiff is that she inquired of one Mason about obtaining a loan to be secured by a mortgage on certain real estate owned by plaintiff. Mason drove plaintiff to Birmingham where she saw defendant Louis Pihakis who was president of the defendant corporation. The result of her meeting with Pihakis was an understanding that the defendant corporation would lend her $7,500.00 to be secured by a mortgage on her property. Subsequently, on January 12, 1968, Pihakis went to Decatur and met plaintiff at her home. Pihakis had an instrument which he represented to be a mortgage; and plaintiff, relying on that representation, signed the instrument without reading it and delivered it to Pihakis. The instrument was a deed to two persons, husband and wife, who are not parties to this lawsuit. Approximately two weeks after she had signed the deed, plaintiff learned that the instrument was a deed and had been filed for record in the office of the judge of probate by Pihakis. Plaintiff called Pihakis on the telephone and told him to "drop" the loan and it has never been closed.

The case for defendants, in outline, is that Pihakis did not misrepresent the character of the instrument to plaintiff; that she read it, and knew what she was signing; that because of plaintiff's age, a ten-year loan such as she desired was not available; that the deed was made to grantees who were younger and could obtain the loan; that on closing of the loan, the real estate would be conveyed back to plaintiff by a conditional sale contract; and that plaintiff was informed of the procedure and agreed to it.

As hereinafter discussed under Assignment 2, subsequent to the telephone conversation in which plaintiff told Pihakis to "drop" the loan, Pihakis sent to plaintiff

by mail a quitclaim deed. In the quitclaim deed, plaintiff is the grantee, and the quitclaim deed purports to have been executed by the grantees named in the deed signed by plaintiff. The complaint was filed February 1, 1968. Subsequently, Pihakis sent to plaintiff a warranty deed in which plaintiff is the grantee. The warranty deed purports to have been executed by the same grantees named in the deed signed by plaintiff. The warranty dec'. appears to have been acknowledged by the grantors named therein on May 23, 1968. Pihakis sent to plaintiff a check for $8.00 together with the quitclaim deed, and also a second check for $8.00 together with the warranty deed. The checks were to pay the cost of recording the respective deeds.

### Assignment 1.

Defendants assign as error the trial court's action in overruling defendants' demurrer to the amended complaint which recites:

"COUNT 1. Plaintiff claims of the defendants the sum of FIFTY THOUSAND DOLLARS ($50,000.00) damages for that in January of 1968 the defendant Pihakis represented to the plaintiff that the defendant Alabama Equity Corporation of Birmingham would make a real estate loan to the plaintiff upon her executing and delivering to the defendants a mortgage on certain real estate owned by the plaintiff more particularly described as follows, to-wit:

"Lots, 1, 2, 19, 20, 21, and 22, Block 4, according to the map of Decatur Mineral and Land Company's property in Section 18, Township 5 South, Range 4 West, of record in the office of the Judge of Probate of Morgan County, Alabama, in Map Book 1, at Page 7.

"The plaintiff further alleges that thereafter on January 12, 1968, the defendant Pihakis presented to the plaintiff a written instrument which was represented by the defendant Pihakis to be a mortgage on the above described property, and the defendant Pihakis requested that the plaintiff execute said instrument in order that her loan could be processed; the plaintiff thereupon executed the written instrument and delivered same to the defendant Pihakis; the plaintiff further alleges that said loan was never closed and that the written instrument was in fact a deed conveying said property to James M. Pihakis and Helen Joyce Pihakis, and said deed was filed for record on January 12, 1968 by the defendant Pihakis in the office of the Judge of Probate of Morgan County, Alabama; the plaintiff further alleges that the representation of the defendant Pihakis that said instrument was a mortgate was false and was known by him to be false, and was willfully made with the knowledge that such was false, and was made for the purpose of deceiving the plaintiff, and the plaintiff alleges that she relied on such representation and signed said instrument ignorant of its contents at the request of the defendant Pihakis. The plaintiff further alleges that she has never recived (sic) any consideration from the defendants for the execution of said instrument.

"The plaintiff further alleges that the aforesaid reporesentation (sic) made by the defendant Pihakis was made by him as the agent, servant or employee of the defendant Alabama Equity Corporation of Birmingham, acting within the line and scope of his authority as such agent, servant or employee, and was willfully made, knowing the same to be false, and was made for the purpose of deceiving the plaintiff and did deceive the plaintiff, for which the plaintiff claims damages, and the plaintiff also claims punitive damages."

Defendants argue that the complaint is defective because it ". . . . does not allege the manner in which the plaintiff was damaged or the extent of any damage."

The only grounds of demurrer, which appear to point out either of the defects

upon which defendants now rely in argument, are grounds 4 and 10 which recite:

"4. For that it is not alleged or shown that plaintiff sustained any damage as a consequence of said alleged fraud."

"10. No damages on the part of the plaintiff have been alleged and shown in said count. For aught appearing from said count plaintiff sustained no hurt or detriment from the alleged fraud."

Grounds 4 and 10 do assert that the complaint fails to show that plaintiff sustained any damage as the result of the fraud charged against defendants, and we will consider whether the allegations of the complaint sufficiently show that plaintiff was damaged as a result of the fraud.

■ As to the second defect now urged by defendants that the complaint fails to show the "extent" of plaintiff's damage, or the "amount" of the damages to plaintiff, the second defect does not appear to be pointed out by any ground of the demurrer and will not be considered. Defendants cite Bates v. Turney, 26 Ala.App. 98, 153 So. 782, to support their argument with respect to failure to allege "the amount of damages to plaintiff," but further consideration of *Bates* is unnecessary since the defect with respect to the amount of damages is not pointed out by the demurrer.

" . . . . '[F]raud, without damage, or damage, without fraud, gives no cause of action; but, where these two do occur, there an action lieth.' " Einstein, Hirsch & Co. v. Marshall & Conley, 58 Ala. 153, 160; Wall v. Graham, 192 Ala. 396, 399, 68 So. 298, 299.

" . . . . 'Deceit and injury must concur. . . . Damage is of the essence of the action of deceit; an essential element to the right of action, and not merely a consequence flowing from it.' " Wall v. Graham, supra.

" . . . . When fraud is pleaded, either at law or equity, the facts out of which it is supposed to arise must be stated. A mere general averment of fraud, without such facts, is subject to apt demurrer properly interposed. . . . .." Crommelin v. Capitol Broadcasting Company, 280 Ala. 472, 474, 195 So.2d 524, 526; Springdale Gayfer's Store Co. v. D. H. Holmes Co., 281 Ala. 267, 201 So.2d 855; and authorities cited.

"[4] . . . . Our decisions require that allegations of fraud in a pleading, to be sufficient, must positively set forth the facts constituting the fraud so that the court can clearly see that fraud has intervened. (Citations Omitted)" Lacey v. Edmunds Motor Co., 269 Ala. 398, 402, 113 So.2d 507, 510.

■ Damage to plaintiff being an essential element of actionable fraud, the inquiry here is whether the facts alleged in the complaint support the conclusion that plaintiff did suffer injury as a result of the fraud alleged.

The facts alleged are that defendant Pihakis represented to plaintiff that a certain instrument was a mortgage and requested that plaintiff execute the instrument; that the instrument was a deed and not a mortgage; that the false representation was wilfully made with intent to deceive the plaintiff; that plaintiff, relying on the representation and ignorant of the contents of the instrument, signed it and delivered it to defendant Pihakis; that plaintiff has not received any consideration for execution of the instrument; and that defendant Pihakis filed the instrument for record in the office of the judge of probate.

The alleged facts show that by plaintiff's action in reliance on the alleged false representation and the subsequent recording of the deed by one of the defendants, a cloud has been cast on plaintiff's title of record. This court has said:

" . . . . A cloud upon title is that which appears to be title, but in law and in fact is not title. Winters v. Powell, 180 Ala. 425, 61 So. 96." Gibson v. Elba

Exchange Bank, 264 Ala. 502, 88 So.2d 163, 169, ¶ [11, 12].

". . . . Every conveyance from the grantor, through whom the party complaining deduces title, not void on its face, but the invalidity of which can be made apparent only on evidence of extrinsic facts, necessarily casts a cloud upon the title. It will embarrass the alienation of the estate, and freedom of alienation it is the policy of the law to promote. It will render the true owner uneasy in the possession and enjoyment of the estate, because it may at any time be the foundation of litigation; and it awakens suspicions of his title in the minds of others, though when the facts are developed its invalidity may be as apparent as if written on its face. These facts may rest, to a great degree, in the memory of witnesses, who may be dispersed, or may die; or they may be obscured by the wearing away of human remembrance. . . . ." Rea v. Longstreet & Sedgwick, 54 Ala. 291, 293.

In a suit to cancel an option as a cloud on the title of complainants, who had granted the option, this court said:

"This option being subject to record under recording statutes, we are of opinion that putting it to record, accompanied by a notation of record warning the public that the optionee claimed the option to be still in force and effect because the optionors had not met their obligations, created a cloud on complainants' title, definitely obstructing the alienation of the property, tending to depreciate its value. . . . ." McDonald v. Birmingham Trust & Savings Co., 239 Ala. 369, 194 So. 839, 840, ¶ [2].

■ Under the facts alleged, the deed executed by plaintiff purports, on its face, to convey title to the grantees named therein, although the deed conveyed nothing when all the alleged facts are known. Under the authorities last quoted, such a recorded deed is a cloud on plaintiff's title, obstructs plaintiff's alienation of her property, and tends to depreciate its value. The cases quoted are cases in equity, but the quotations illustrate the nature and effect of the facts alleged in the complaint and lead to the conclusion that the facts so pleaded do show that plaintiff has sustained injury as the result of her action in reliance on the false representations allegedly made by defendants. Accordingly, the court did not err in overruling the grounds of demurrer to the amended complaint on which defendants rely, and Assignment 1 is without merit.

### Assignment 2.

Assignment 2 recites:

"2. The trial court erred in overruling the defendants' motion for a new trial containing the following ground:

"6. The verdict is not sustained by the great preponderance of the evidence in that the evidence was not sufficient to sustain an action of fraud or deceit against the defendants. (Tr. p. 13)"

Defendants say in brief:

"It is evident from the record that the Plaintiff failed to prove any damages sustained as a result of the alleged misrepresentations. . . ."

Defendants are correct in saying that plaintiff did not prove that she had paid, or become obligated to pay, any specific sum of money as a proximate result of the alleged fraud. As hereinafter stated, however, we are of opinion that the evidence does show that plaintiff is entitled to recover nominal damages and that the right of plaintiff to recover nominal damages is sufficient to sustain the recovery of punitive damages.

■ The testimony shows that plaintiff first applied to the defendant corporation through Mason in 1967 for a loan. On this first application, plaintiff paid a fee of $25.00, part of which went to the defendant

corporation to pay the cost of processing plaintiff's application. This first application, however, lapsed or was abandoned by plaintiff. Several months later, plaintiff again sought a loan from the defendant corporation in either late 1967 or early 1968. She was not required to pay a second application fee. In the course of events which followed, the alleged misrepresentation was made on January 12, 1968. We wish to make it clear that the $25.00 payment made by plaintiff in 1967 as a loan application fee does not constitute injury or damage to plaintiff resulting from the misrepresentation allegedly made on January 12, 1968. Plaintiff's payment of the $25.00 fee in 1967 cannot be the result of a misrepresentation which was not made until the following year, 1968, and had no existence whatever until several months after the payment was made.

Defendants contend further that the undisputed evidence shows that plaintiff had received the two deeds executed by the grantees named in the deed executed by plaintiff and also a check for $8.00 with each of the two deeds, which checks were sufficient to pay all costs of recording the two deeds. Defendants argue that, without any cost to plaintiff, she can record the two deeds and thus be placed in the same position in which she was prior to January 12, 1968.

Some years ago, in reviewing the trial of an action for breach of contract, the Supreme Court of the United States said:

> "It is a rule of law, without exception so far as we are aware, that any circumstance, otherwise competent in evidence to reduce the damages, may be proven on the trial for that purpose, although it may not have come into existence until after the commencement of the action." Marsh v. McPherson, 105 U.S. 709, 26 L.Ed. 1139, 1141.

The evidence showing the delivery of the two deeds and checks to plaintiff appears to have been admissible to reduce the amount of plaintiff's recovery but not to defeat plaintiff's right to recover. The evidence supports a finding that plaintiff signed the deed as alleged and that defendant Pihakis recorded the deed. As stated above under Assignment 1, if plaintiff's evidence be believed by the jury, the events occurring January 12, 1968, gave rise to a cause of action and plaintiff became entitled to recover at least nominal damages.

> "It is also well settled that exemplary damages may be awarded, either in trespass or case where the act is wanton, malicious, or attended with circumstances of aggravation. Sparks v. McCreary, 156 Ala. 382, 47 So. 332, 22 L.R.A.(N.S.) 1224; Birmingham Waterworks Co. v. Brooks, 16 Ala.App. 209, 76 So. 515; Ex parte Brooks(,) 200 Ala. 697, 76 So. 995; Rosser v. Bunn and Timberlake, supra [66 Ala. 89]." (Comma Added) Norton v. Bumpus, 221 Ala. 167, 169, 127 So. 907, 908.

> "While some jurisdictions have held that compensatory damages are essential to support an award of exemplary or punitive damages, it is the doctrine of our cases, as well as that of a substantial number of other states, that an award of nominal damages authorizes, in the discretion of the trier of fact, the award of punitive damages where legal malice, willfulness, and a reckless disregard accompanies the invasion of the rights of another. It would appear in such situations that 'nominal damages' are considered within the context of 'actual damages.' Louisville and Nashville R. R. Co. v. Smith, 141 Ala. 335, 37 So. 490; Goodson v. Stewart, et al., 154 Ala. 660, 46 So. 239; Alabama Great So. R. R. Co. v. Sellers, 93 Ala. 9, 9 So. 375; Burk v. Knott, 20 Ala.App. 316, 101 So. 811." Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484, 492.

*Maring-Crawford* was an action for fraud and deceit in which this court affirmed judgment for plaintiff and in consideration of Assignments 35 and 6 held

that it was not error to refuse a requested charge to effect that punitive damages cannot be awarded where no actual or compensatory damages have been shown by plaintiff. This court said:

"Ordinarily, nominal damages are proper where there has been a breach of legal duty, and either no damages are suffered, or there is a failure of proof of actual damages. Conner v. Hamlin, 33 Ala.App. 54, 29 So.2d 570. See also Vol. 7, Ala.Dig., Damages, ☞ No. 9, for numerous additional authorities, although it appears that in actions of fraud and deceit, damages must be shown since injury is an essential element of such type of action.

"The evidence presented by the appellee tends to show a breach of duty by the appellant toward the appellee. She was entitled to nominal damages even though her proof may have been insufficient to support compensatory damages if actual damages be reasonably inferred from the evidence." (233 So.2d at 491)

In *Maring-Crawford*, this court explained Mobile Building & Loan Ass'n v. Odom, 232 Ala. 19, 166 So. 698, and Oates v. Glover, 228 Ala. 656, 154 So. 786, both of which are cited by the instant appellant. The explanation in *Maring-Crawford* appears to be adequate and will not be repeated here.

This court has said:

" . . . . Many acts denounced as crimes by our statutes or by the common law, involve no pecuniary injury to the individual against whom they are directed, and which, while the party aggrieved could not recover damages, as compensation beyond a merely nominal sum, are yet punished in the criminal courts, and may also be punished in civil actions by the imposition of 'smart money;' and on the same principle, acts readily conceivable which involve malice, willfulness, or wanton and reckless disregard of the rights of others, though

not within the calendar of crimes, and inflicting no pecuniary loss or detriment, measurable by a money standard, on the individual, yet merit such punishment as the civil courts may inflict by the imposition of exemplary damages. And upon these considerations the law is, and has long been, settled in this state, that the infliction of actual damage is not an essential predicate to the imposition of exemplary damages. Parker v. Mise, 27 Ala. 480; [Western Union] Telegraph Co. v. Henderson, 89 Ala. 510, 7 So. 419; [Alabama G. S.] R. Co. v. Heddleston, 82 Ala. 218, 3 So. 53. See, also, 1 Suth. Dam. 748. The charges requested by the defendant to the effect that actual damage must be shown before punitive damages could be recovered were therefore properly refused." Alabama Great Southern Railroad Co. v. Sellers, 93 Ala. 9, 15, 16, 9 So. 375, 377.

The rules in Alabama appear to be as follows:

■ To recover compensatory damages for fraud and deceit, plaintiff must show that he has suffered an actual pecuniary loss as the result of the fraud.

■ To recover punitive damages for fraud and deceit, plaintiff must show that the fraud is of the character described in Alabama Great Southern Railroad Co. v. Sellers, supra, as justifying punitive damages, and that plaintiff has suffered actual damages as the proximate result of the fraud; but, as the terms actual and nominal are here used, nominal damages are actual damages, and punitive damages may be awarded although plaintiff's actual damage is purely nominal.

■ The evidence of plaintiff squarely contradicts the evidence for defendants. The jury apparently believed the plaintiff's evidence which supports an inference that defendant Pihakis wilfully and knowingly misrepresented to plaintiff the nature of the instrument with intent to deceive plaintiff; that plaintiff relied on the false

representation and as a result a cloud was placed on her title which gave her a right to recover at least nominal damages, which right is sufficient to sustain an award of punitive damages.

The action of defendants in sending to plaintiff the two deeds and checks does not defeat plaintiff's cause of action.

In an action for fraud in plaintiff's purchase of shares of stock of a corporation, where defendants allegedly falsely represented that the corporation was solvent, this court said:

> "The acceptance and retention of a note of the corporation, after its failure for the amount of the money invested by the plaintiff, as evidence of the amount due, without any agreement that it should be in release or satisfaction of the demand against these defendants, as appears from the undisputed evidence, presented no defense to the action." Williams v. Bedenbaugh, 215 Ala. 200, 205, 110 So. 286, 290.

In an action for deceit in the sale of land, the Court of Appeals held that it was not error to refuse the following charge requested by defendant:

> "(12) The court charges the jury that all plaintiff had a right to demand of defendant was a good title to the house and lot sold him by defendant, and, if the evidence reasonably satisfies you that defendant offered plaintiff such a title, then your verdict should be for defendant." Berry v. Wooddy, 16 Ala.App. 348, 77 So. 942.

The Court of Appeals said:

> "The defendant could not destroy the plaintiff's cause of action predicated on fraud committed by the defendant in the sale of the property by tendering, after the right of action had accrued, a complete title to the property, and for this reason charge 12 requested by the defendant was properly refused." (16 Ala.App. at 349, 77 So. at 943)

In the instant case, defendants could not, by tender of the two deeds and checks, defeat plaintiff's cause of action after the right of action had accrued. Assignment 2 is without merit.

### Assignments 3 and 4.

Assignments 3 and 4 raise the same points considered under Assignment 2 and are without merit for the same reasons.

### Assignments 5, 6, and 7.

Defendants assign as error the action of the court in overruling those grounds of the motion for new trial which assert that the verdict for $22,500.00 is excessive and is the result of bias, malice, and prejudice on the part of the jury.

What this court has previously said seems appropriate here:

> ". . . . It is no longer subject to question that punitive damages are allowed in this state in fraud cases where the defendant has made false misrepresentations intended to defraud the plaintiff. We have further held that the awarding of punitive damages in such a case is discretionary with the jury, acting with regard to the enormity of the wrong and the necessity of preventing a similar wrong.—Treadwell Ford, Inc. v. Leek, 272 Ala. 544, 133 So.2d 24.
>
> ". . . . . . . .
>
> "We think the jury was fairly charged on the issue of punitive damages. We are not persuaded as argued by appellant that the amount of the award is such that it indicates bias or prejudice on the part of the jury. On the other hand the nature of the conduct on the part of appellant as shown by the evidence which the jury was justified in believing justifies the award. We cannot on this evidence rest a reversal on this ground." J. Truett Payne Co. v. Jackson, 281 Ala. 426, 429, 430, 203 So.2d 443, 446.

588

## Assignment 8.

█ Defendants assign as error the refusal of their requested Charge No. Six, which is to effect that the jury cannot find for plaintiff unless the jury is reasonably satisfied that plaintiff was caused to sign the paper by reason of the misrepresentations of defendants. Charge 6 appears to be adequately covered by the oral charge and error is not shown. Title 7, § 273

### Assignment 9.

Defendants' refused Charge 8 was adequately covered by defendants' given Charge Nine and the court's oral charge.

### Assignments 10 and 11.

Defendants' refused Charges 1 and 2 are affirmative with hypothesis instructing the jury to find for defendants and were refused without error.

### Assignment 12.

Plaintiff testified that on the occasion she and Mason went to the office of defendant Pihakis, Pihakis and Mason had a conversation. Plaintiff testified as follows:

"Q Did Mr. Mason have any conversation with Mr. Pihakis in your presence?

"A Yes, they talked—he was—this Mr. Pihakis was talking to him telling about how many millions of dollars they were pulling down.

"Q Was that in his office in your presence?

"A In my presence, he said they were really making money and showed pictures where they had big blow-outs, dinners and things like that and he had them hanging up in his office.

"Q Did he say how they was making all those millions of dollars?

"A No, he didn't say that, he just told him his company was making millions of dollars.

"Q Making millions of dollar loans or making that in profits or what?

"A Profits."

It is noted that defendant made no objection.

On direct examination of defendant Pihakis, the following occurred:

"Q What type of business organization is Alabama Equity Corporation?

"A Alabama Equity Corporation is a publicly held corporation that is owned by its six hundred stock holders—

"MR. LENTZ: We object to that, immaterial, and move to strike the answer.

"THE COURT: Overrule.

"Q (BY MR. POWELL) Go ahead, Mr. Louis.

"A And it is under the—licensed by the State of Alabama and Securities Commissioner in Montgomery; it is checked from time to time—

"MR. LENTZ: I am going to move to strike that, its not responsive.

"THE COURT: It's not in response and I will sustain the last statement.

"Q What type of business is Alabama Equity Corporation engaged in and was it engaged in from the time it was created?

"A In mortgage loans on land or homes only.

"Q In what geographic areas does the company operate its business?

"A Throughout the State of Alabama.

"Q How long has it been in existence?

"A A little better than three years.

"Q Was it set up with a capital endowment, how did it get its money that it operated on?

589

"MR. LENTZ: I object to that, its immaterial.

"THE COURT: I sustain that."

Defendants assign the last quoted ruling of the court as error. Defendants argue that the court erred in sustaining objection to the last question under the doctrine of curative admissibility stated as follows:

"If a party introduces illegal evidence, his opponent has the unconditional right to rebut such evidence, with other illegal evidence, and this is true even though the opponent did not object to the illegal evidence. . . . ." McElroy, Law of Evidence in Alabama, 2nd Ed., Vol. I, § 14.01, page 13.

"Illegal evidence is admissible to rebut illegal evidence introduced by the opposing party. Longmire v. State, supra [130 Ala. 66, 30 So. 413]; Gordon v. State, 129 Ala. 113, 30 So. 30; Morgan v. State, 88 Ala. 223, 224, 6 So. 761; 5 Mayf.Dig. 421." Huntsville Knitting Mills Co. v. Butner, 194 Ala. 317, 323, 69 So. 960.

We think it apparent that whether the defendant, Alabama Equity Corporation, was making millions of dollars or not is irrelevant to the issues in this case. What defendant Pihakis said in the presence of plaintiff may or may not have been relevant, but that question is not presented because defendants did not object. As plaintiff argues, after plaintiff had gone into what Pihakis said in the presence of plaintiff, the defendants were then entitled to go into the entire conversation and defendants were also entitled to prove that Pihakis did not make the statement which plaintiff said he had made. We are not altogether persuaded that defendants were entitled to go into details as to how much money the corporation was making, but even if defendants were so entitled, the question to which objection was sustained did not have to do with the amount of money the corporation was making. The inquiry to which the court sustained objection was whether the corporation was set up with a capital endowment and how the corporation got the money it operated on. Answer to such an inquiry on its face does not appear relevant to the issue of how much money the corporation was making.

We are of opinion that objection to the question was sustained without error.

Affirmed.

HEFLIN, C. J., and SIMPSON, BLOODWORTH, and McCALL, JJ., concur.