Did the trial court err in granting summary judgment to defendants, Phoenix Properties Trust, Inc., Paul Kirkland, W. Aikens, Charles Shaw, Ron Morrow, and Cooper and Company, Inc., on the claims of Gulf City Body Trailer Works, Inc. ("Gulf City") for damages for fraudulent misrepresentation[1] and for specific performance of a contract to purchase real property?
Kirkland, a Mobile County employee, contacted Morrow, the managing broker of Cooper and Company, to discuss a site that Mobile County might be willing to purchase for a new jail. Morrow contacted Shaw, another real estate broker, who had previously offered the County a potential jail site that had been rejected. Shaw and Morrow agreed to work for Kirkland anonymously in assembling a number of different properties to offer to the County for use as a jail and to split the commission to be paid by Kirkland. Aikens, an elderly man who did maintenance and yard work for Shaw, gave his permission for his name to be used on all purchase agreements for the jail site, in order to keep Kirkland's identity as a purchaser concealed. The standard form that was used to make offers on various properties was prepared by Morrow. Kirkland, Morrow, and Shaw sought to accumulate properties through an "option-type agreement" with the owners, without earnest money having to be put up until the County accepted the proposal. After a letter of intent was signed by the County, Kirkland, Morrow, and Shaw intended to take it to a bank and use it as collateral to borrow the earnest money, which would then be paid to the seller. Shaw obtained an option on property owned by Gulf City, with Shaw Real Estate and Insurance listed as the "Selling Broker," on June 6, 1984. This was superseded and replaced by an agreement dated June 27, 1984, from which two lots were deleted. Each agreement provided that "this offer to purchase is contingent on and subject to . . . a [sic] acceptable final inspection of property by buyer." The buyer was W. Aikens, and title was to be taken in the name of "W. Aikens or Assigns." The agreement also provided:
 "Buyer understands that this offer, when signed, will constitute a building agreement between Buyer and Seller and herewith deposits $15,000.00 in the form of check due on acceptance evidencing Buyer's good faith to be held by Selling Broker, and to apply [to] the purchase price. If this offer is not accepted or the title is not marketable, or if the terms of purchase are contingent upon . . . other contingencies as specified which cannot be met, this deposit to be refunded, otherwise to be retained. In the event of default by Buyer, all deposits made hereunder may be forfeited as liquidated damages and, as Seller's sole remedy."
Gulf City agreed to pay the "Selling Broker" a commission of 5%. The purchase price was $875,000. Barry Gritter, the president of Gulf City, talked with two other real estate agents who had dealt with Gulf City in the past, Gulf City's attorney, and Gulf City's banker, about this, prior to signing the June 27 agreement.
The County purchased another site for the jail; and, therefore, the sale between *Page 872 
Gulf City and Aikens was not consummated.
Gulf City brought this action and it now appeals from a summary judgment for the defendants on all claims except the claims for breach of contract, which are still pending. The summary judgment was certified as final pursuant to Rule 54 (b), Ala.R.Civ.P. We affirm in part, reverse in part, and remand.
 I. Specific Performance
Our two standards of review must be placed in juxtaposition in reviewing the summary judgment on the claims for specific performance.
The equitable remedy of specific performance rests largely in the discretion of the trial court, and the trial court's ruling may be overturned only if shown to be palpably erroneous.Edwards v. Thornburgh, 396 So.2d 678 (Ala. 1981).
Summary judgment is inappropriate where there is a scintilla of evidence as to each element of the non-movant's cause of action; and the burden is on the party moving for summary judgment to demonstrate that no genuine issue of fact exists, viewing all reasonable inferences from the facts most favorable to the non-movant. Rule 56, Ala.R.Civ.P.; Autrey v. Blue Cross Blue Shield of Alabama, 481 So.2d 345 (Ala. 1985).
Gulf City, as a seller, seeks to force W. Aikens, as buyer, to purchase a tract of real property. If the contract is specifically enforced, Gulf City will receive a certain sum of money only. Apparently, under the law of a substantial number of jurisdictions, this would not affect Gulf City's right to specific performance.
 "It is well settled that the vendor in a contract for the sale of land, when fully able, ready, and willing to comply with his contract by conveying the title and quantity of land which he contracted to sell, may obtain in his own favor a decree of specific performance of the contract, although the relief actually obtained by him is the recovery of money — the purchase price — for which he may also have a remedy by action at law."
71 Am.Jur.2d Specific Performance § 115, p. 147 (1973).
However, in Alabama, this is not the law. This Court wrote inRushton v. McKee Co., 201 Ala. 49, 77 So. 343 (1917):
"As early as 1746, Lord Hardwicke said:
 "`The constant doctrine of this court is, that it is in their discretion whether they will decree a specific performance, or leave the plaintiff to his remedy at law.' 3 Atk. 388.
 "This doctrine has been steadily maintained down to the present time. Seymour v. Delancey, 6 Johns.Ch. (N.Y.) 222; Ellis v. Burden, 1 Ala. 458; 2 Storey's Equity, 736-742. `The question is not what the courts must do, but what the court may do, under the circumstances.' This discretion is not an arbitrary assumption of authority, but a sound discretion, regulated, as near as may be, by general rules. Pulliam v. Owen Russell, 25 Ala. 492; Sims v. McEwen's Adm'r., 27 Ala. 184; Casey v. Holmes, Bott Earle, 10 Ala. 777.
 "Specific performance will not be had if the performance as distinguished from damages or compensation in money for the breach cannot be of importance to complainant." (Emphasis supplied.)
This alone is sufficient for this Court to hold that the trial court was not palpably erroneous in granting summary judgment. Add to this the provision in the contract at issue, i.e., "In the event of default by Buyer, all deposits madehereunder may be forfeited as liquidated damages and asSeller's sole remedy." (emphasis supplied.) There can be no doubt that the trial court did not abuse its discretion. There was no error in granting summary judgment on the counts seeking specific performance.
 II. Fraudulent Misrepresentation
The standard of review of a summary judgment based on a showing by the defendant that plaintiff cannot prove a cause of action is whether it clearly appears, with no genuine issue as to any material fact, that there is no evidence as *Page 873 
to some essential element of the cause of action. In determining whether there is evidence of the questioned element, this Court must review the record in a light most favorable to the plaintiff and resolve all reasonable doubts against the defendant. Harrell v. Reynolds Metals Co.,495 So.2d 1381, 1383 (Ala. 1986). The initial burden is on the movant to prove that there is no evidence as to some essential element of the cause of action. In the present case, the defendants did not meet this burden as to the cause of action for fraudulent misrepresentation.
To uphold the summary judgment on the fraudulent misrepresentation claim, the defendants initially must show that there is no evidence of at least one of the following elements: (1) a false representation, of (2) a material fact, on which plaintiff (3) reasonably[2] relied, and thereby sustained (4) damage. Farmers Merchants Bank v. ClimateMasters Electrical Co., 514 So.2d 1003 (Ala. 1987).
Viewing the evidence most favorably to Gulf City, as our standard of review requires us to do, we hold that the defendants did not meet this burden.
The "false representation" alleged is that the buyer "herewith deposits $15,000.00 in the form of check due on acceptance evidencing Buyer's good faith to be held by Selling Broker [Shaw], and to apply on the purchase price."
The "Buyer" (Aikens, Kirkland, Phoenix Properties) and their agents (Shaw, Morrow, and Cooper) deposited nothing; and the "Selling Broker" (Shaw) held nothing. This was in accordance with a pre-arranged agreement among Kirkland, Phoenix Properties, Shaw, Morrow, and Cooper. Aikens gave his permission to Kirkland, Shaw, and Morrow to use Aikens's name as the "Buyer" of potential jail site properties so as to keep Kirkland's identity as purchaser concealed. Aikens signed the "purchase agreement" and knew that he had not deposited $15,000.00 with Shaw.
Gulf City would not sign the "purchase agreement" until the amount deposited by the Buyer with the Selling Broker was increased from $1,500.00 to $15,000.00. Therefore, there is evidence that the earnest money was a material element.
The written agreement negotiated at arm's length by Shaw for his undisclosed principal and Gulf City, with its cadre of attorneys, real estate agents, and bankers, clearly provided: "The Buyer . . . herewith deposits $15,000.00 in the form ofcheck due on acceptance evidencing Buyer's good faith. . . ."
There was evidence that Gulf City reasonably relied on the representation. Shaw, who was representing an undisclosed principal in purchasing this property, was also designated as "Selling Broker" and was to receive a commission from Gulf City of $43,750 from the proceeds received by Gulf City if the sale were consummated. We cannot say as a matter of law that it was unreasonable for Gulf City to rely on the Buyer's representation and commitment to deposit $15,000.00 with Shaw, as Selling Broker, or for the Selling Broker to notify Gulf City if it did not receive the $15,000.00 deposit with the Buyer's offer as the "purchase agreement" recited.
Damage is an essential element of actionable fraud. Pihakisv. Cottrell, 286 Ala. 579, 243 So.2d 685 (1971).
There is a scintilla of evidence that Gulf City was damaged, even if only nominally, for it signed the agreement, thereby obstructing the further alienation of the property described in the agreement for the period of time designated in the agreement, Pihakis v. Cottrell, supra, relying on the representation that $15,000.00 had been paid to its broker in exchange for this obstruction of alienation.
Summary judgment was improperly granted as to the count alleging fraudulent misrepresentation. This is for the trier of fact. *Page 874 
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.
[1] Other tort actions (concealment; and, as to Aikens, Shaw, Morrow, and Cooper, breach of fiduciary duty, negligence, and wantonness) were alleged by Gulf City. In the parties' briefs, these are argued more as elements of fraudulent misrepresentation than as separate causes of action, and we do not address them individually as causes of action.
[2] First National Bank of Mobile v. Horner, 494 So.2d 419 (Ala. 1986), and Torres v. State Farm Fire Casualty Co.,438 So.2d 757 (Ala. 1983).